[Crim. No. 17107. Second Dist., Div. One. May 25, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
SHIRLEY MAE LOVE, Defendant and Appellant.

## COUNSEL

Walter L. Gordon, Jr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jerold A. Krieger, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—Appellant has appealed pursuant to Penal Code section 1538.5, subdivision (n), after a plea of guilty entered subsequent to the denial by the trial court of her motion to suppress evidence. The only issue in the case at bench is thus the propriety of the action of the trial court in denying that motion.

### *Facts*

Several days prior to August 18, 1968, an informer told Officer Robert D. Cody of the Los Angeles Police Department that "he had knowledge" that Cleveland Washington was "dealing in large amounts of marijuana."

The informer told Cody where Washington lived and took him to the location. The informer pointed out Washington's house and a 1966 Cadillac, white over blue, the vehicle customarily driven by the suspect.

On two prior occasions, the informer had given Cody information concerning large transactions in marijuana. On one of those occasions, the informer gave information that a suspect was about to transport 97 kilos of marijuana to New York. As a result of that information, the suspect was arrested and bound over at a preliminary hearing. The suspect was not convicted, however, because he disappeared during trial. On the other occasion, the informer told Cody of a contemplated large shipment of marijuana due to enter the United States across the Mexican border. Cody passed the information to the United States Customs authorities who used it to intercept a shipment of marijuana into the United States. On three other occasions the informer furnished information on which Cody was unable to act. On no occasion had the informer given Cody information which was false.

At 3 p.m., on August 18, 1968, the informer told Cody that Washington had received a large amount of marijuana and "was dealing it off." The informer stated that Washington was at that moment negotiating with "a female Negro, blonde hair, approximately 35 years" for the sale of the remainder of the marijuana Washington had on hand. The informer stated that it was the prospective purchaser's intention to transfer the marijuana to an eastern or midwestern city.

On the basis of the information received from the informer, Cody proceeded to Washington's residence at 209 West 97th Street, arriving there at about 5:45 p.m. He had neither a search nor arrest warrant. When Cody arrived at that address, he saw Washington's 1966 white-over-blue Cadillac parked in the driveway. Washington was loading suitcases into the trunk of the car. Appellant, a Negro woman with blonde hair and approximately 35 years of age, was sitting in the right front seat. Washington entered the driver's seat of the car. Followed by Cody, the Cadillac proceeded to the United Airlines terminal at Los Angeles International Airport. Appellant exited from the car and returned to the automobile with a porter. Washington removed three suitcases from the trunk of the Cadillac. The porter placed them upon a cart. Appellant and Washington spoke briefly. Washington reentered the auto and drove away while appellant entered the terminal building.

The porter commenced to wheel the three suitcases into the terminal. Cody identified himself to the porter and took the suitcases into his custody. He opened one of them in the airline terminal office. Inside he found 21

kilo bricks of marijuana. The flight on which appellant was ticketed was about to leave. Cody proceeded to the boarding area and arrested appellant.

Pursuant to Penal Code section 1538.5, appellant moved in the trial court to suppress the evidence of the marijuana found in the suitcase upon the ground that it was illegally obtained. The motion was denied. Appellant then entered her plea of guilty to the charge of violation of Health and Safety Code section 11530.5 (possession of marijuana for sale) and perfected her appeal from the denial of her motion to suppress evidence.

### Issues on Appeal

Appellant contends: (1) there was no probable cause for her arrest because Cody's testimony with respect to the information received from the informer was equivocal; (2) probable cause is lacking because there is an insufficient showing that the informer was reliable; (3) probable cause is lacking because there is an inadequate showing of the manner in which the informer acquired his information; and (4) the search which disclosed the marijuana was not incident to an arrest.

### Probable Cause

Probable cause for an arrest may consist of information obtained from an undisclosed informer of known reliability. In the case at bench, there is ample evidence that an informer told Officer Cody that a man named Washington was then in the process of selling a large quantity of marijuana to a woman meeting the description of appellant. If that information is otherwise properly considered, it raises a strong suspicion in a reasonable mind that Washington and appellant, his purchaser, were committing a felony. Appellant argues that there are equivocations in the testimony of Officer Cody. To the extent there are inconsistencies in his testimony, they at most raise an issue of credibility which was resolved by the trial court and is not reviewable by us on the state of the evidence.

The record also supports the implied finding of the trial judge that Officer Cody's informer was reliable. That informer had given accurate information of criminal activity on two prior occasions and had not given any misinformation. Moreover, the past accurate information from the informer related not to run of the mill narcotics offenses but to instances of crimes involving transport of large quantities of contraband. Dealings in quantities such as were involved in the two past crimes are so infrequent that accurate information concerning them clearly vouches for the informer's reliability.

A closer question is presented by appellant's argument to the effect that the record is inadequate in its foundational showing that the informer was

giving information which satisfies the tests of *Draper* v. *United States,* 358 U.S. 307 [3 L.Ed.2d 327, 79 S.Ct. 329]; *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States,* 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]; and *People* v. *Hamilton,* 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681].

*Aguilar* v. *Texas, supra,* and *People* v. *Hamilton, supra,* hold that where probable cause supporting a warrant is based solely upon information from a reliable informer, it must be established that the informer spoke of his own knowledge or obtained his information from a reliable source. *Draper* v. *United States, supra,* and *Spinelli* v. *United States, supra,* deal with the situation in which probable cause is founded both upon a statement of an informer and corroboration of portions of that statement by independent observation. *Spinelli* sets forth the test to be applied in the latter situation (393 U.S. 410, 415 [21 L.Ed.2d 637, 643]). "The informer's report must first be measured against Aguilar's standards so that its probative value can be assessed. If the tip is found inadequate under Aguilar, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in Aguilar must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration?"

Application of the governing test set forth in *Spinelli* is aided by contrasting the facts and result of that decision with those of *Draper* v. *United States, supra,* 358 U.S. 307, discussed with approval in *Spinelli.* In *Spinelli,* the United States Supreme Court dealt with an affidavit filed in support of a warrant. The affidavit alleged that an informer had stated that Spinelli was engaged in bookmaking activity using two specified telephone numbers. It contained no factual support for a conclusionary statement that the informer was reliable. Independent investigation disclosed that Spinelli used the telephones. The Supreme Court characterized the corroboration as "one small detail" (393 U.S. 410, 417 [21 L.Ed.2d 637, 644]), and held it insufficient to establish either that the informer was reliable or that he had obtained his information in a reliable way.

In *Draper,* the informer had given accurate information to narcotics enforcement officers in the past. He told a federal narcotics agent that Draper was peddling narcotics and was going to travel by train from Chicago to Denver arriving on the morning of September 8 or 9 with three ounces of heroin. The informer gave a detailed physical description of Draper and his clothing, and said that he would be carrying a tan zipper

bag and habitually "walked real fast." On September 9 at the Denver railroad station, the agent saw a person meeeting the description alight from an incoming train from Chicago carrying a tan zipper bag. The person began to walk rapidly toward an exit (358 U.S. 307, 309-310 [3 L.Ed.2d 327, 329-330]). The Supreme Court held that the information from the informer, as corroborated, constituted probable cause for an arrest without a warrant and for an incidental search.

■ The facts of the case at bench meet the test of probable cause spelled out in *Spinelli*. Here the informer is shown to have been reliable by the accuracy of past information given by him to the police. That information concerned crimes involving dealings in and transportation of uncommonly large quantities of contraband. The information given concerning Washington was that he was dealing in an uncommonly large amount of marijuana which was about to be transported from the city. The informer detailed the transaction as one with a woman described as a Negress, blonde, about 35 years of age, who intended to take a large quantity of marijuana to the East or Midwest. The informer stated that the sale by Washington to the woman was then being negotiated. Observation by Officer Cody confirmed the detail of the information given. Within three hours, Washington and a woman meeting the description given were observed leaving Washington's residence with three suitcases which they took to the airport and apparently checked to accompany the woman on her flight. The woman entered the terminal apparently to board a plane. Paraphrasing the language of the majority opinion in *Spinelli*, the corroboration by independent sources rendered the "tip" as trustworthy as one satisfying the requirements of *Aguilar*. (See *People* v. *Castaneda*, 1 Cal.App.3d 477 [82 Cal.Rptr. 205].)

The record of the case at bench discloses a factual situation closely analogous to that present in *Draper* and one in which the independent evidence of reliability of the informer's information far exceeds that present in *Spinelli*. Moreover, there is a substantial doubt that the test enunciated in *Spinelli* is applicable to invalidate a finding of probable cause in any case in which corroboration of information from an informer exceeds, to any real degree, that present in the facts of *Spinelli*. The invalidation of the magistrate's finding of probable cause in *Spinelli* results from a concurring opinion of Mr. Justice White by which a majority of the court is created. Justice White concludes his concurring opinion with the statement: "Pending full-scale reconsideration of that case [Draper], on the one hand, or of the Nathanson-Aguilar cases on the other, I join the opinion of the Court and the judgment of reversal, especially since a vote to affirm would produce an equally divided Court" (393 U.S. 410, 429 [21 L.Ed.2d 637, 651]).

■ There is an independent basis upon which the trial court properly

could have determined probable cause for the arrest and search. *Draper* validates the arrest and search there involved on the basis that the circumstances were such that the government agent "would have been derelict in his duties had he not pursued [the information]" (358 U.S. 307, 313 [3 L.Ed.2d 327, 332]). In the case at bench, there was corroborated information that a woman meeting appellant's description had purchased a large quantity of marijuana and was about to take it to the East or Midwest. Appellant's three suitcases were at the airport and about to be transported by airplane to a different jurisdiction. Officer Cody, possessed of the knowledge obtained from the informer and his own observations, would have been derelict in his duty had he not done that which was necessary to prevent the probable addition of a major quantity of marijuana to the already too large stream of illicit commerce. Under the circumstances, the minimum of that which was necessary was that which was done—the arrest and incidental search of appellant. (Cf. *People* v. *McGrew,* 1 Cal.3d 404 [82 Cal.Rptr. 473, 462 P.2d 1]; *Abt* v. *Superior Court,* 1 Cal.3d 418 [82 Cal.Rptr. 481, 462 P.2d 10].)

██ Appellant argues that the test of *Draper* and *Spinelli* is not applicable in California. She contends that *People* v. *Hamilton,* 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681], precludes a finding of probable cause based upon information from an informer unless the informer's statements themselves establish that the informer acted from personal knowledge or an otherwise reliable source. The argument misconstrues the context in which *Hamilton* was decided. *Hamilton* does not discuss the issue present in the case at bench—the extent of independent corroboration necessary to validate probable cause based upon information from an informer who does not expressly purport to speak from his own knowledge or to disclose the source of his information. No corroboration is involved in *Hamilton.* The decision is, therefore, not controlling to the case at bench.

## Incident to Arrest

Appellant contends that, irrespective of the existence of probable cause for her arrest, the search of the suitcase preceded the arrest and was not incident to it. The argument is not supported by the record or the law.

██ A search which precedes an arrest is nevertheless incident to it where the search and arrest are for practical purposes one transaction. (*People* v. *Cockrell,* 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116].) The record of the case at bench discloses a search of the suitcase in the airline terminal office and the immediate arrest of appellant at the boarding

area of the terminal. The search and arrest were so closely related in time and function as to be part of one transaction.

## Conclusion

We conclude that the search which disclosed the evidence which appellant sought to suppress was valid. The judgment of conviction is affirmed.

Lillie, Acting P. J., concurred.

**GUSTAFSON, J.**—I dissent.

The court admits that in the case at bench we have an "informer who does not expressly purport to speak from his own knowledge or to disclose the source of his information." Clearly Officer Cody from what he was told by the informer could not have obtained either an arrest warrant or a search warrant. (*Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *People* v. *Hamilton* (1969) 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681].)

But Officer Cody then proceeded by his own observation to verify *part* of what the informer had told him. The officer observed defendant and Washington leave Washington's house with three suitcases and travel to the airport. The information which Officer Cody did not verify by his observation was that the suitcases contained marijuana. The court holds first that the information which was verified furnished probable cause for the arrest and search under the doctrine of *Draper* v. *United States* (1959) 358 U.S. 307 [3 L.Ed.2d 327, 79 S.Ct. 329].

I think that *Draper* is of doubtful validity today. Nothing which the officer in *Draper* verified by his observation incriminated the defendant. The court referred to the only incriminating fact ("that Draper would have the heroin with him") as the "remaining unverified bit of [the informer's] information." Mr. Justice White, concurring in *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584], expresses his doubts about the *Draper* case and notes that the four man majority opinion in *Spinelli* "while seemingly embracing *Draper,* confines that case to its own facts." I think Mr. Justice White's analysis is correct because the majority opinion in *Spinelli* states that verification of "only innocent-seeming activity and data" is not enough and that the test (either for a valid warrantless

arrest or for the issuance of a valid arrest warrant) is the extent of the information regarding the "accused's criminal activity." In *Draper* the verification was of "only innocent-seeming activity and data" and there was no verification of Draper's "criminal activity."

The criminal activity in the case at bench was that Washington was selling marijuana to the defendant and that the defendant was about to take the marijuana out of this state. As in *Spinelli,* the informer's report "could easily have been obtained from an offhand remark heard at a neighborhood bar." Since Officer Cody did not see fit to ascertain from the informer the source of his information concerning the criminal activity and since Officer Cody did not verify the criminal activity by his own observation, I think that under *Spinelli* there was no probable cause for arresting the defendant.

The temptation is great, in a case such as this where defendant admitted her guilt, to find that the arrest and search were valid. But the Fourth Amendment protects all persons, not only those who are criminals. Suppose that Officer Cody found no marijuana when he opened the suitcases. Defendant then would have been subjected to the annoyance, embarrassment and humiliation of an officer's looking at items in her suitcases which were not meant for his eyes.

Thousands of persons depart from Los Angeles International Airport each day. It is not uncommon that someone will know when a traveler plans to leave his home, hotel or other place of residence and with whom he will drive to the airport. If an anonymous reliable informer reports, without disclosing how he obtained his information, that the traveler is carrying contraband in a suitcase and if verification by the officer that the traveler left his place of residence as predicted by the informer suffices to give the officer probable cause to believe that the traveler is carrying contraband, searches of the effects of countless innocent persons may become commonplace. It is not too much to require that the officer ascertain that the information concerning the criminal activity is reliable before the officer embarks on an intrusion of the privacy of the traveler.

I think the court is clearly wrong in holding that an alternate and independent basis for upholding the arrest and search is that Officer Cody "would have been derelict in his duty had he not" made the arrest and search. Surely an officer has no duty to search or arrest when forbidden to do so by the Fourth Amendment. I am aware of no principle that an arrest or a search which would otherwise be invalid satisfies the Fourth Amendment if it is undertaken "to prevent the probable addition of a major *quantity* of marijuana to the already too large stream of illicit commerce." *Draper* said no such thing. While *Draper* said that the officer's

duty was to pursue the information, it upheld the arrest (in a decision joined in by only four Justices now on the court) because from the information known to him the officer "had probable cause . . . to believe that [Draper] was committing a violation of the laws of the United States relating to narcotic drugs at the time he arrested him."

I would reverse the judgment.