[Crim. No. 17812. Second Dist., Div. Three. Dec. 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES LEE JOHNSON, Defendant and Appellant.

**COUNSEL**

Richard S. Buckley, Public Defender, James L. McCormick, James M. Epstein and Harry W. Brainard, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jane C. Liebman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COBEY, J.**—Charles Lee Johnson appeals from a judgment of conviction of possession of heroin.[1] (Health & Saf. Code, § 11500.) The issues presented are whether the trial court was correct in denying appellant disclosure of the confidential informer's identity and whether the search that uncovered the heroin was constitutional. In this connection appellant contends that his arrest, to which the search was incidental, was without probable cause.

### THE FACTS

During the afternoon of April 14, 1969, a confidential reliable informer, although unpaid, telephoned a narcotics officer of the Los Angeles Police Department, Joseph M. Machuszek and told him that appellant and a "female Mexican" by the name of Betty were selling heroin from apartment 31 at 14 Westminister Street in Venice; appellant rented the adjoining apartment, 32; that the two apartments had a common hall; appellant would frequently let "hypes" (users of heroin) use the other apartment; recently it was being used by a Timmie and a Barbara; and the heroin in apartment 31 was concealed in a telephone jack on the south wall of the bedroom.

At approximately 6:45 that evening, Officer Machuszek, accompanied by Sergeant Kline, went to the common door between apartments 31 and 32. After their second knock and their announcement that they were narcotics officers on a narcotics investigation, appellant answered the door. Appellant was known to Officer Machuszek because the officer had previously arrested appellant for possession of heroin.

The officers immediately placed appellant under arrest for possession of heroin. After noting the presence of two persons in the common hall between the apartments and appellant's female codefendant seated in the living room of apartment 31, Officer Machuszek walked into the bedroom of this apartment, removed the cover from the telephone jack on the south wall and found therein a chrome cigarette case. He opened the case and discovered inside it three small balloons containing a substance which was later established to be heroin.

Officer Machuszek recognized the informer from his voice. He had dealt with him on many prior occasions. All of these, except one, had been fruitful. Officer Machuszek did not ask the informer for the source of his in-

---

[1]The judgment includes a denial of appellant's motion for a new trial from which denial appellant also appeals. This denial is not separately appealable and the appeal therefrom will therefore be dismissed. The denial will, however, be reviewed herein. (See Pen. Code, § 1237.)

formation or whether the informer had personally ever been in apartment 31.

Appellant made his request for the name of the informer on cross-examination of Officer Machuszek at the preliminary hearing. At that time the People claimed their privilege under Evidence Code section 1041. After argument by counsel the magistrate sustained the claim of privilege. Subsequently at a pretrial hearing on a motion to suppress the evidence (the heroin) pursuant to Penal Code section 1538.5 a second motion for disclosure of the informer's identity was made. It also rested upon the transcript of the preliminary hearing. It was denied. At trial a third motion for disclosure was made. It likewise was based solely on the transcript of the preliminary hearing. It was denied.

## DISCUSSION

■ The Attorney General seeks to justify the nondisclosure of the informer's identity on two grounds: (1) There was an insufficient showing at the trial level that the informer could be a material witness on the issues of appellant's guilt; and (2) the informer could not be such a witness. We agree generally but not completely.

The following colloquy occurred between court and counsel for appellant's codefendant immediately following his request of Officer Machuszek on cross-examination at the preliminary hearing for the name of the informer:

"MR. WILLENS [Deputy District Attorney]: Your Honor, again I am going to have to claim the privilege in this matter as I previously have claimed.

"MR. SOLOMON [Attorney representing codefendant]: The reason for claiming—the District Attorney's reasons for claiming the privilege I don't think is relevant.

"MR. WILLENS: The evidence code of the State of California says it is, your Honor.

"MR. SOLOMON: The cases say if it is relevant as to the defense of the case, anyway to the defendants, now the officer doesn't know whether the informant was there or not there. Therefore, it is relevant for the defense of this defendant to question the informant and to see if the informant had, in fact, been there.

"Now, this officer cannot tell us whether he had or had not been there, and it is relevant to this defendant's defense to know, since this may be a percipient witness to the exact facts of this case, and also to probable

cause. Therefore, we will request that the District Attorney or the officer disclose the name ot [*sic*] us.

"MR. LEVY [Deputy Public Defender representing appellant]: If I might join in co-counsel's motion, your Honor.

"I would also like to add that the inference to be derived from the fact that the informant told the officers specifically where the contraband was, is perhaps that he had been in the apartment and, therefore, most likely was a percipient witness.

"MR. SOLOMON: The most recent case which was handed down by the Supreme Court is Honore—

"THE COURT: *Honore versus The Superior Court.*

"MR. SOLOMON: Yes, January, 1969. The Court said, 'Defendants need not to prove that the informer could give testimony favorable to them in order to compel disclosure of his identify [*sic*] nor need not show that he was a participant in or an eye witness to the crime. Their burden extends only to a showing that "in view of the evidence, the informer would be a material witness to the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial".'

"We are in the same facts there. This person might possibly have been there or been there some time shortly before, the officer doesn't know whether he was there or not. Therefore, I think we have met the burden under this case. We have the right to question the witness. It is not a case where the officer knows he was there, he never asked him.

"THE COURT: The motion is to disclose the name of the informant, is that right?

"MR. SOLOMON: Yes.

"THE COURT: Any further argument on that issue?

"MR. SOLOMON: Submit it.

"THE COURT: The motion is denied."

It is apparent from the quoted colloquy that appellant desired the name of the informer in order to find out from him whether he personally had been recently in the apartment of appellant, which he described in some detail, and might therefore have seen the heroin either being hidden or in its hiding place.

The quoted argument of appellant's trial counsel in support of his request for the name of the informer was not as strong as it might have been. He

could have pointed out that he wanted to locate the informer so that he might obtain the source of the informer's information, if that source were not the informer himself, and to ascertain from that source whether his client was in any way involved in the heroin being in his client's apartment. (See *People* v. *Sullivan,* 271 Cal.App.2d 531, 544 [77 Cal.Rptr. 25].)

We are not concerned, however, with whether appellant made the best possible showing, but with whether he made the showing required by the aforementioned *Honore* v. *Superior Court,* 70 Cal.2d 162, 168 [74 Cal. Rptr. 233, 449 P.2d 169]. The Attorney General argues that he did not because more is required in this respect than mere speculation, that an articulated theory of defense must be advanced and perhaps evidence offered by the defendant as well. (See *People* v. *Martin,* 2 Cal.App.3d 121, 127 [82 Cal.Rptr. 414]; *People* v. *Sewell,* 3 Cal.App.3d 1035, 1039 [83 Cal.Rptr. 895].)

We are not persuaded that all of the foregoing is necessarily the law, *Honore* makes no reference to an evidentiary showing, but simply to a showing. Evidence Code section 1042, subdivision (d), which has been added to the code since the trial of this case, in providing for an evidentiary hearing outside the presence of the jury and for an in camera hearing as well, if the prosecutor so requests, does not *require* that the defendant at the evidentiary hearing present evidence in support of his request for the disclosure of the informer's identity. In *Honore, supra,* 70 Cal.2d 162, the court pointed out at page 170 that, "by the very nature of the problem here confronting defendants it is impossible for them to state *facts* which would show the materiality of the informant's testimony." Furthermore, in both *Honore* and the subsequent case of *Price* v. *Superior Court,* 1 Cal.3d 836 [83 Cal.Rptr. 369, 463 P.2d 721], the evidence analyzed by the court to determine whether a sufficient showing had been made was exclusively the allegations of the affidavit filed to obtain the issuance of the search warrant.

Under the evidence in this case, much like *Honore,* there were in addition to appellant, at least three, and possibly more, individuals to whom the heroin found in appellant's apartment might have belonged. On the other hand, unlike *Honore,* the record here does not establish either that the informer had ever been in appellant's apartment or that his information was firsthand. It is true that an inference to this effect could be drawn from its very detailed nature (see *People* v. *Hamilton,* 71 Cal.2d 176, 181 [77 Cal.Rptr. 785, 454 P.2d 681], *Guerrero* v. *Superior Court,* 2 Cal.App.3d 136, 140 [82 Cal.Rptr. 443]), but this nature in itself did not prevent its having been relayed to the informer from someone else.

This circumstance also distinguishes *Price* from the case before us. In *Price* the ambiguous statement that the informer overheard a conversation

by persons "known to him" to have been present at the commission of the crime was held sufficient to establish a reasonable possibility that the informer himself had also been present at the scene of the crime. (See *Price* v. *Superior Court, supra,* at p. 844.)

The record before us does not disclose such a reasonable possibility. Since Officer Machuszek did not ask his reliable informer whether the informer had ever been in appellant's apartment or where and how the informer had obtained the information which he gave the officer, the record contains nothing indicating that the informer himself had either been in appellant's apartment or in some other way had been personally involved in the heroin being placed or kept in hiding there. We hold that under these circumstances the trial court was correct in sustaining the officer's claim of privilege under Evidence Code section 1041.

## THE SEARCH WAS UNCONSTITUTIONAL

■ The Attorney General contends that the search by the police which uncovered the heroin was constitutional because it was incidental to appellant's lawful arrest. Whether appellant's arrest was lawful depends upon whether it was made on probable or reasonable cause. (See U. S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 19; *Giordenello* v. *United States,* 357 U.S. 480, 485 [2 L.Ed.2d 1503, 1509, 78 S.Ct. 1245]; *Ker* v. *California,* 374 U.S. 23, 33 [10 L.Ed.2d 726, 738, 83 S.Ct. 1623]; Pen. Code, § 836, subd. 3.) The Attorney General argues that probable cause may be found in the information which the reliable confidential informer supplied to Officer Machuszek and in the officer's knowledge that he had previously arrested appellant for the same crime.

We disagree. Under the two-pronged test set forth in *People* v. *Hamilton, supra,* 71 Cal.2d 176, 179-180, for the sufficiency of an affidavit filed to obtain a search warrant, the affidavit must set out the informant's language in factual rather than conclusionary terms and "must establish that the informant spoke with personal knowledge of the matters contained in . . . [his] statement," and must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable.

In this case the officer's past experience with the informer established the informer's credibility generally. But in addition to this general credibility of the informer, the officer also had to have within his knowledge something establishing the credibility of the information furnished him by the informer. For this he needed to know either that the informer spoke from personal knowledge of those things he told the officer, or that the informer had obtained the information in some other reliable way. (See

*Spinelli* v. *United States,* 393 U.S. 410, 425 [21 L.Ed.2d 637, 649, 89 S.Ct. 584] [concurring opinion of White, J.].)

Earlier in this opinion in deciding that the disclosure of the informer's identity was not required, we noted that "the record contains nothing indicating that the informer himself had either been in appellant's apartment or in some other way had been personally involved in the heroin being placed or kept in hiding there." In other words, there is nothing in the record indicating that the informer's information regarding the heroin being in appellant's apartment was based on *the personal knowledge of the informer.* As pointed out in reverse circumstances by Justice Mosk in his dissenting opinion in *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 844, an informer should not be deemed to be absent from the scene of the crime for one purpose and then be deemed to be present for another. He either was there or he was not there. He could not have been both there and not there.

Since the informer did not reveal to Officer Machuszek the underlying circumstances from which the informer concluded that the heroin was where he claimed it to be, the officer did not know whether the informer had learned in a reliable way of the precise location of the heroin in appellant's apartment. Under these circumstances Officer Machuszek did not have probable cause to arrest appellant on the basis of the information supplied him by the informer. (See *Aguilar* v. *Texas,* 378 U.S. 108, 113-114 [12 L.Ed.2d 723, 728-729, 84 S.Ct. 1509].)

Moreover, Officer Machuszek did nothing to verify the accuracy of the informer's information before proceeding to appellant's apartment and arresting him there when he responded to the knocks on the door of the apartment. He did not inquire whether the couple in the hall were Timmie and Barbara and whether the person in the living room was of Mexican descent and named Betty. He did not ascertain if appellant rented the adjoining apartments, 31 and 32.

In this respect this case differs markedly from *Draper* v. *United States,* 358 U.S. 307, 309-310, 313 [3 L.Ed.2d 327, 329-330, 332, 79 S.Ct. 329] and *People* v. *Love,* 8 Cal.App.3d 23, 29 [87 Cal.Rptr. 123], where the arresting officer confirmed by personal observation the accuracy of the nonincriminating portion of the informer's story. The only verification Officer Machuszek made in this case before arresting appellant was locating him at the apartment in question. He did not verify otherwise the nonincriminating portion of the informer's story. This case, therefore, unlike *Love,* did not involve a *Draper* situation.

Finally, the officer's knowledge that he had arrested appellant previously

for the same crime did not cure this defect in the intrinsic reliability of the information supplied by the informer. The officer's knowledge extrinsically indicated that the information he received from the informer might well be credible but all that it actually established was that sometime in the past appellant had been reasonably believed to have committed the same crime. It in no way proved that appellant was currently committing that crime as the informer stated in the information he gave the police. (Cf. *People* v. *Reeves*, 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393].) We hold, therefore, that nothing the police did or knew beyond the informer's story cured the constitutional deficiency in that story.

■ In closing we note that it is now established that more evidence is required in support of probable cause to make a lawful arrest without a warrant therefor than is required to justify the issuance of a search warrant. (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 111 [12 L.Ed.2d 723, 726]; *People* v. *Madden,* 2 Cal.3d 1017, 1023 [88 Cal.Rptr. 171, 471 P.2d 971].)

The judgment is reversed. The purported appeal from the denial of appellant's motion for a new trial is dismissed.

Schweitzer, Acting P. J., concurred.

**ALLPORT, J.**—I dissent.

In my opinion the information conveyed to Officer Machuszek by the reliable informant was legally sufficient to support the conclusion of the officer and the finding of the trial court that there existed probable cause for defendant's arrest. In the recent case of *People* v. *Love,* 8 Cal.App.3d 23 [87 Cal.Rptr. 123], the court said at page 30: "Appellant argues that the test of *Draper* and *Spinelli* is not applicable in California. She contends that *People* v. *Hamilton,* 71 Cal.2d 176 [77 Cal.Rptr. 785, 454 P.2d 681], precludes a finding of probable cause based upon information from an informer unless the informer's statements themselves establish that the informer acted from personal knowledge or an otherwise reliable source. The argument misconstrues the context in which *Hamilton* was decided. *Hamilton* does not discuss the issue present in the case at bench—the extent of independent corroboration necessary to validate probable cause based upon information from an informer who does not expressly purport to speak from his own knowledge or to disclose the source of his information. No corroboration is involved in *Hamilton*. The decision is, therefore, not controlling to the case at bench."

I am impressed with the views expressed by Justice Mosk in *People* v. *Hamilton,* 71 Cal.2d 176, 183 [77 Cal.Rptr. 785, 454 P.2d 681], in *People* v. *Scoma,* 71 Cal.2d 332, 340-341 [78 Cal.Rptr. 491, 455 P.2d 419],

and in *People* v. *Sesslin,* 68 Cal.2d 418, 431-435 [67 Cal.Rptr. 409, 439 P.2d 321]. As was said by Justice Mosk in *Price* v. *Superior Court,* 1 Cal.3d 836 at page 846 [83 Cal.Rptr. 369, 463 P.2d 721]: "In finding error, the majority now add another to the unfortunate congeries of cases that can only have an inhibiting effect upon law enforcement agencies which seek in good faith to comply with the public policy favoring reliance upon warrants instead of probable cause. (See my dissents in *People* v. *Sesslin* (1968) 68 Cal.2d 418, 431 [67 Cal.Rptr. 409, 439 P.2d 321]; *People* v. *Hamilton* (1969) *supra,* 71 Cal.2d 176, 183; *People* v. *Scoma* (1969) 71 Cal.2d 332, 339-340 [78 Cal.Rptr. 491, 455 P.2d 419].)" I do not believe that either *Hamilton* or *Reeves* compel the conclusion reached by the majority and I believe that a contrary result would be factually permissible, legally sound and in no way violative of defendant's constitutionally guaranteed rights. (*Draper* v. *United States,* 358 U.S. 307 [3 L.Ed.2d 327, 79 S.Ct. 329]; *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States,* 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]; *People* v. *Love, supra,* 8 Cal.App.3d 23.)

I would affirm the judgment of conviction.

Respondent's petition for a hearing by the Supreme Court was denied February 17, 1971.