42 Cal.App.3d 300 (1974)
116 Cal. Rptr. 641
THE PEOPLE, Plaintiff and Respondent,
v.
MICHAEL GERALD HERDAN, Defendant and Appellant.
Docket No. 24036.
Court of Appeals of California, Second District, Division Three.
October 3, 1974.
*302 COUNSEL
Alan Fenster for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Jack T. Kerry, Stephen M. Kaufman and Cynthia S. Waldman, Deputy Attorneys General, for Plaintiff and Respondent.
*303 OPINION
COBEY, Acting P.J.
Michael Gerald Herdan appeals from a judgment, entered upon a plea of nolo contendere of violation of Health and Safety Code section 11530.5 (now § 11359), possession for sale of marijuana, after the trial court denied his motion to suppress certain evidence as having been obtained pursuant to an allegedly unreasonable search and seizure. (Pen. Code, § 1538.5.) The appeal lies. (Pen. Code, § 1538.5, subd. (m); Cal. Rules of Court, rule 31(d).)
The sole issue on appeal is the propriety of the trial court's denial of appellant's motion to suppress.

FACTS[1]
On May 31, 1972, Los Angeles Police Officer Richard Cron, one Sergeant Klein, and four other police units conducted a surveillance of an automobile body shop which, according to information obtained by Officer Cron from an informant, J. Losh,[2] would be the site of the delivery by appellant to Losh of 50 pounds of hashish oil.
Officer Cron observed appellant arrive at the site in a Mercedes Benz, driven by one Clifford Guttersrud. The two men and Losh then went to the trunk of the vehicle, opened it, and Losh apparently looked inside the trunk before the trunk was closed. Losh then gave a prearranged signal to the police which indicated that he had seen contraband. From Officer Cron's position, however, he could see nothing in the trunk.
Appellant and Losh then walked away and were out of Officer Cron's sight for three to five minutes. They returned in appellant's automobile, a Pontiac. Again, Losh was shown something in the trunk of that vehicle, whereupon Losh gave another prearranged signal to Officer Cron, which indicated that the presence of all of the narcotics that were to be delivered had been verified. Losh and appellant then drove to Losh's residence, with Guttersrud following behind in his vehicle. When they arrived, Losh went into the house while appellant and Guttersrud remained outside. Officer Cron and *304 Sergeant Klein then rushed over and accosted appellant and Guttersrud. Officer Cron identified himself and asked appellant if he had any narcotics in the vehicle,[3] to which appellant replied that he did.[4] Thereupon Officer Cron, who felt that appellant was subject to arrest prior to the question, and who would have arrested appellant regardless of the answer appellant gave to the question, then arrested appellant.[5] The officer then searched both vehicles and found a green suitcase in the trunk of the Pontiac and a brown suitcase in the trunk of the nearby Mercedes Benz. The green suitcase was opened by Officer Cron at that time, and 34 pounds of marijuana, rather than hashish oil, was found therein. The brown suitcase was opened at the police station without a warrant. It contained 16 additional pounds of marijuana.

DISCUSSION
Appellant contends that the trial court erroneously denied his motion to suppress the 50 pounds of marijuana found in the trunks of the two vehicles.
(1a) Specifically, he contends that: (1) probable cause did not exist to arrest him or to search the cars before he was questioned about the narcotics; (2) Officer Cron was constitutionally required, but failed, to inform him of his Miranda rights (Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), and that his answer, therefore, may not be used to justify the subsequent search;[6] and (3) in any case, it was constitutionally necessary for Officer Cron to obtain a search warrant before he searched the suitcases found in the car trunks. We agree with appellant's first two subcontentions and we, therefore, reverse.
Both the arrest of appellant and the searches of the two vehicles were conducted without a warrant. As such, the burden was on the People at the hearing to prove that the arrest and subsequent searches were constitutional. (Evid. Code, § 664; Badillo v. Superior Court, 46 Cal.2d 269, 272 [294 P.2d 23].) The People failed to meet that burden in various respects.
*305 It is clear that Officer Cron lacked probable cause to arrest appellant or to search the vehicles at the time that Officer Cron appeared upon the scene and accosted appellant. In order for probable cause then to exist, it was necessary, among other things, for the People to prove that Losh was a reliable informant. (See Aguilar v. Texas (1964) 378 U.S. 108, 114-115 [12 L.Ed.2d 723, 729, 84 S.Ct. 1509].) This was not done. There was absolutely no evidence offered regarding his reliability.
The Attorney General contends, however, that Losh was a "citizen-informer," and that as such he is deemed automatically reliable. (2) The People, however, failed to meet their burden of showing that Losh was a "citizen-informer," as distinguished from a paid informer. (People v. Guidry, 262 Cal. App.2d 495, 498 [68 Cal. Rptr. 794].) There is no evidence of solid value to indicate that Losh was one rather than the other. Officer Cron failed even to identify his informant. It was appellant who identified the informant by name and occupation. Even assuming this information to be accurate, such meager information does not prove that Losh was a citizen-informer. There is a very real possibility that Losh was a regularly used police informant who also happened to have a regular occupation. In fact, Losh's active involvement in setting up appellant for the arrest tends to cast doubt on his being merely a citizen-informer. Losh's conduct went far beyond the type of conduct usually, but not always, performed by the typical citizen-informer who, unexpectedly witnessing or suffering a crime, informs law enforcement officials regarding his observations but does nothing more. (See, e.g., Krauss v. Superior Court, 5 Cal.3d 418, 420 [96 Cal. Rptr. 455, 487 P.2d 1023] (maid spotted marijuana and informed police); People v. Hogan, 71 Cal.2d 888, 889 [80 Cal. Rptr. 28, 457 P.2d 868] (citizen-victim of robbery reports his robbery to police); People v. Gardner, 252 Cal. App.2d 320, 322 [60 Cal. Rptr. 321] (robbery victim reported crime and license number of get-away car); People v. Lewis, 240 Cal. App.2d 546, 547-548 [49 Cal. Rptr. 579] (eyewitness to burglary pointed out defendant as burglar to police); but see People v. Lopez, 271 Cal. App.2d 754 [77 Cal. Rptr. 59].) Stripped of the citizen-informer label there was no evidence from which it could reasonably be inferred that Losh was reliable. The information he transmitted to Officer Cron, therefore, did not constitute probable cause.
Even assuming arguendo, however, that Losh was a citizen-informer, probable cause to arrest and/or search appellant and his car was still lacking. Although the test of reliability that must be applied when a tip is received from an experienced informer is not necessarily the test applied when a private citizen aids the police as a good citizen, our Supreme Court has noted that the label "citizen-informer" does not eliminate the necessity *306 of the People establishing to some degree that the information obtained was reliable. (Krauss v. Superior Court, supra, 5 Cal.3d 418, 422; People v. Balassy, 30 Cal. App.3d 614, 621 [106 Cal. Rptr. 461].) In the instant case there was no evidence to confirm the reliability of the information. Officer Cron could see no narcotics from his vantage point, nor could he hear any conversation. (1b) In short, he knew nothing independent of Losh's information to substantiate Losh's or his information's reliability. (Cf. Krauss v. Superior Court, supra, 5 Cal.3d at p. 422; People v. Lopez, supra, 271 Cal. App.2d 754, 759-760.) Officer Cron, therefore, lacked probable cause to arrest appellant or to search the cars.
We also believe that Miranda warnings were required when Officer Cron asked appellant whether narcotics were in the Pontiac. (3) A suspect must be given his Miranda warnings  that he has a right to remain silent, that he is entitled to an attorney, appointed if necessary, and that anything he says may be used against him  whenever he is interrogated by law enforcement officials while in custody. Custody occurs if the suspect is physically deprived of his freedom of action in any significant way (Miranda v. Arizona (1966) supra, 384 U.S. 436, 444 [16 L.Ed.2d 694, 706]) or is led to believe reasonably that he is so deprived. (People v. Arnold, 66 Cal.2d 438, 448 [58 Cal. Rptr. 115, 426 P.2d 515].)
(4a) In the instant case, we do not believe that the People met their burden (People v. White, 69 Cal.2d 751, 761 [72 Cal. Rptr. 873, 446 P.2d 993]) of proving that appellant was not in custody when the interrogation took place.
Custody is an objective condition. (People v. Morse, 70 Cal.2d 711, 722 [76 Cal. Rptr. 391, 452 P.2d 607].) The subjective intent of the interrogator to arrest the suspect is not, in itself, a sufficient basis upon which to conclude that custody exists.[7] (People v. Kelley, 66 Cal.2d 232, 246 [57 Cal. Rptr. 363, 424 P.2d 947].) (5) When an arrest has not yet taken place, the factors considered in deciding whether custody has attached are many.[8] *307 Among the most important are: (1) the site of the interrogation;[9] (2) whether the investigation has focused on the suspect;[10] (3) whether the objective indicia of arrest are present;[11] and (4) the length and form of questioning.[12]
(4b) In the instant case we conclude that applying these factors appellant was deprived of his freedom in a significant way, and that in any case he reasonably could so believe.[13] First, the interrogation, although it did not occur in the coercive confines of a police station, also did not occur in the friendly confines of the suspect's home. Instead it occurred in a less friendly site, the street outside the police informant's residence. Second, there is no doubt that the investigation had focused on appellant. Four police units were present at the scene solely to arrest appellant in the act of selling *308 narcotics. Third, the objective indicia of arrest appear to have been present. It should be remembered that Officer Cron believed that he had probable cause to arrest appellant. He did not arrive on the scene merely to investigate, but rather to arrest appellant. He came upon the scene with Sergeant Klein in an apparently sudden fashion, and he arrested appellant almost immediately. Although he asked appellant an accusatory question before doing so, he freely admitted that he would have made the arrest regardless of what the answer was. In short, the indicia of arrest were present  multiple police officers, their rapid entry upon the scene and, presumably, the type of conduct ordinarily present when an arrest is being made of a seller of narcotics.
Furthermore, appellant could reasonably have believed that the indicia of arrest were present. Appellant was in the process of delivering narcotics when he was suddenly accosted by two police officers, one of whom asked him about the possible presence of narcotics in his vehicle. Appellant could reasonably believe that at that moment he was in custody, and that he was not free to leave the scene.[14]
Finally, although only one question was asked of appellant, it was not a neutral question but one clearly intended to elicit an incriminating admission. It was highly accusatorial in nature.
These factors, we believe, indicate that appellant was in custody at the time of the arrest, that he was not free to leave, and that, in any case, he reasonably could have so believed.
Our case at bar is more compelling than the facts in People v. White, supra, 69 Cal.2d 751, where our Supreme Court held that Miranda warnings were required. There, the suspect voluntarily accompanied officers to the police station for questioning regarding a murder.[15] Once there, the investigating officer came upon independent information which focused suspicion on the suspect. Nonetheless, the officer chose to question the suspect in order to give him a reasonable opportunity to exculpate himself, and not in order to elicit a confession. The officer asked appellant only one question, namely, whether a particular coat involved in the crime belonged to him. The suspect said that it did not. The suspect then put *309 on the coat at the officer's request[16] and when the officer commented that it fit him well, the suspect blurted out a confession. The court, noting that the investigation had focused on the suspect, that the officer did not intend to let the suspect go until the questioning was over, and that the officer's comments were accusatorial in nature, held that custody existed. (Id., p. 761.)
In the instant case, like White, the investigation had focused on appellant, the officer did not intend to let appellant leave, and the one question asked was accusatorial. Moreover, in the case at bar, two officers, not just one officer, were present, and Officer Cron was not merely asking his question in order to give the suspect a chance to prove his innocence, but rather intended to arrest the suspect no matter what his answer was.
Our case is in many ways on all fours with People v. Abbott, supra, 3 Cal. App.3d 966. There, an informer, who probably was a "citizen-informer," but whose reliability had not been established, told a police officer that Abbott had marijuana in his coat pocket. The informer pointed out Abbott and then left. The officer approached Abbott and began to ask him questions of an unrelated nature solely in order to delay the suspect until the officer's partner could arrive. When his partner did arrive, the officer asked the suspect what he had in his coat pocket, and Abbott finally pulled out the marijuana and said that it was "grass" (i.e., marijuana). The court noted that the "evidence is uncontradicted that at the time the arresting officer approached and began to interrogate [Abbott], the investigation was not a general inquiry ...; suspicion ... had focused specifically upon [Abbott]. It is also clear that the question asked ... was intended to elicit an incriminating statement. Moreover, it is uncontradicted that the arresting officer's purpose in engaging [Abbott] in conversation was to prevent his leaving.... Therefore, ... the officer's question constituted an in-custody interrogation." (Id., pp. 969-970.)
As in Abbott, the instant case involved information from an informant whose reliability had not been established, only one question was asked the suspect, the site of the questioning was the street, and two officers were in the immediate vicinity. Also like Abbott, the investigation had begun to focus on appellant, the arresting officer intended not to let the suspect leave, and the question asked was of an accusatory nature.
We conclude, then, that the officer was under a constitutional obligation *310 to inform appellant of his Miranda rights.[17] As the warnings were not given, the fruit of that questioning, the answer "yes," cannot be used to supply probable cause to the subsequent arrest or search. (People v. Hale, 262 Cal. App.2d 780, 787-788 [69 Cal. Rptr. 28].) As probable cause did not exist independent of appellant's admission, appellant's motion to suppress the evidence should have been granted.
The judgment of conviction is reversed.
Potter, J., concurred.
ALLPORT, J.
I dissent. An officer may arrest without a warrant if he has reasonable grounds to believe that the person to be arrested has committed a felony. (Pen. Code, § 836.) To constitute reasonable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty. (Cunha v. Superior Court, 2 Cal.3d 352, 356 [85 Cal. Rptr. 160, 466 P.2d 704].) Information received from a reliable informant will constitute probable cause if the basis for the claim of reliability is set forth and some of the underlying circumstances established demonstrating that the information provided is based upon personal knowledge of the informant. (People v. Johnson, 13 Cal. App.3d 742, 748 [92 Cal. Rptr. 105]; People v. Love, 8 Cal. App.3d 23, 30 [87 Cal. Rptr. 123].) A tip from an untested informant, although insufficient in itself, may constitute probable cause if it is corroborated in essential respects by other facts, sources or circumstances. (People v. Lara, 67 Cal.2d 365, 374-375 [62 Cal. Rptr. 586, 432 P.2d 202]; People v. Sandoval, 65 Cal.2d 303, 308-309 [54 Cal. Rptr. 123, 419 P.2d 187]; Clifton v. Superior Court, 7 Cal. App.3d 245, 254 [86 Cal. Rptr. 612].) As was said in People v. Gardner, 252 Cal. App.2d 320 at pages 324-325 [60 Cal. Rptr. 321]: "In dealing with the problem of informants whose *311 information may or may not be sufficient to create probable cause, it should be noted that a citizen who purports to be the victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proven or tested. (See People v. Lewis, 240 Cal. App.2d 546, 550 [49 Cal. Rptr. 579]; People v. Griffin, 250 Cal. App.2d 545, 550-551 [58 Cal. Rptr. 707].) The rationale underlying this principle is that such person is `more than a mere informer. He is an observer of criminal activity, who by calling the police, acts openly in aid of law enforcement.' (People v. Lewis, supra.) Accordingly, a number of cases have held that it is reasonable for police officers to act upon the reports of such observers." The rule is further clarified in People v. Hogan, 71 Cal.2d 888 at pages 890-891 [80 Cal. Rptr. 28, 457 P.2d 868], where the Supreme Court said: "Although information provided by an untested informer or by an anonymous informer is not, without some showing justifying reliance, sufficient to justify an arrest [citation], information from a citizen who purports to be the victim of a robbery or an assault has been held sufficient even though his reliability has not been previously tested. [Citations.] Such a person, who may expect to be called to testify after an arrest, and may be exposing himself to an action for malicious prosecution if he makes unfounded charges, is more than a mere informer who gives a tip to law enforcement officers that a person is engaged in a course of criminal conduct." Thus in the case at bench Losh was more than a mere informer. He was an observer of criminal activity acting in the interest of aiding law enforcement. His established place of business would insure his availability to testify in support of the charges he made to the police regarding the planned narcotic sale. Officer Cron had adequate opportunity to observe the occurrence of the sale transaction just as Losh had predicted, thus establishing the probable cause for arrest of defendant.
Since there was probable cause for the arrest, the search of defendant's vehicle incidental thereto was proper (People v. Thompson, 25 Cal. App.3d 132, 141 [101 Cal. Rptr. 683]), even though it followed the question asked of defendant by Cron concerning existence of contraband in the vehicle. The discovery of the narcotics was not the result of the interrogation by Cron, but rather was the product of the incidental search. Even though it might be argued that the answer was improperly elicited under Miranda and therefore not admissible in evidence, the admissibility of the narcotics was not subject to the same objection.
Respondent's petition for a hearing by the Supreme Court was denied November 27, 1974. McComb, J., was of the opinion that the petition should be granted.
NOTES
[1] On appeal we must construe the evidence at the hearing conducted pursuant to Penal Code section 1538.5 in the light most favorable to the People, as the party which prevailed below. (People v. Morton, 21 Cal. App.3d 172, 176 [98 Cal. Rptr. 261].)
[2] Officer Cron never identified his informant by name or background, nor did he testify regarding the informant's reliability. Appellant, however, testified that the informant was one J. Losh, an owner of a body shop who also did repair work for various General Motors dealerships. This is the full extent of the evidence regarding the informant.
[3] Appellant testified that various officers approached him from different places. One car drove up, he said, and blocked his car, another officer came from behind a tree, and still others seemed to come from an apartment building across the street. He also testified that one officer, who identified himself as an agent of the Treasury Department, pointed a gun at him. He further testified that before he was questioned he was frisked for weapons.
[4] Appellant testified that he replied in the negative.
[5] Guttersrud was arrested by Sergeant Klein.
[6] Section 1538.5 of the Penal Code is a proper vehicle for bringing a motion to suppress evidence on the ground that it was obtained as the fruit of a Miranda violation. (People v. Superior Court (Mahle) 3 Cal. App.3d 476, 484 [83 Cal. Rptr. 771].)
[7] We stress that the subjective intent of the interrogating officer is not by itself enough to constitute custody, but it apparently is a factor to be considered in determining whether the suspect did or could reasonably believe he was in custody. Thus, we note that our Supreme Court and this court have often commented on the intent of the police officer as part of the court's basis for the conclusion that custody did exist. (See, e.g., People v. White, supra, 69 Cal.2d 751, 761; People v. Abbott, 3 Cal. App.3d 966, 969 [84 Cal. Rptr. 40].)
[8] Custody may occur prior to arrest. (People v. Furnish, 63 Cal.2d 511, 516 [47 Cal. Rptr. 387, 407 P.2d 299].) It has been held that it occurs, at the latest, when there is probable cause to arrest the suspect. (People v. Ceccone, 260 Cal. App.2d 886, 892-893 [67 Cal. Rptr. 499]; People v. Wright, 273 Cal. App.2d 325, 333 [78 Cal. Rptr. 75]; contra, People v. Allen (1967) 28 App.Div.2d 724 [281 N.Y.S.2d 602].)
[9] Usually, interrogation at a police station is deemed inherently coercive, although this is not the case if the suspect comes to the police station on his own initiative or voluntarily. (See People v. Hill, 70 Cal.2d 678, 693-694 [76 Cal. Rptr. 225, 452 P.2d 329], cert. den., 406 U.S. 971 [32 L.Ed.2d 671, 92 S.Ct. 2416].) An interrogation at a suspect's home, on the other hand, is usually, but not always, deemed noncoercive. (See People v. Miller, 71 Cal.2d 459, 480 [78 Cal. Rptr. 449, 455 P.2d 377], cert. den., 406 U.S. 971 [32 L.Ed.2d 672, 92 S.Ct. 2417].)
[10] Prior to Miranda, the test applied to decide whether an investigation had reached a point where an attorney had to be afforded a defendant was whether the investigation had begun to focus on the suspect. (Escobedo v. Illinois (1964) 378 U.S. 478, 490-491 [12 L.Ed.2d 977, 986, 84 S.Ct. 1758].) Since Miranda, however, the test is simply whether the suspect is in custody. (See People v. Murphy, 8 Cal.3d 349, 362 [105 Cal. Rptr. 138, 503 P.2d 594]; Lowe v. United States (9th Cir.1969) 407 F.2d 1391, 1396-1397; United States v. Hall (2d Cir.1969) 421 F.2d 540, 543.) Focus, however, remains an element in deciding whether custody has taken place. (See, e.g., People v. White, supra, 69 Cal.2d 751, 761.)
[11] If the police officer uses physical restraint on the suspect (see State v. Saunders (1967) 102 Ariz. 565 [435 P.2d 39, 41-42]) or draws a gun (see State v. Intogna (1966) 101 Ariz. 275 [419 P.2d 59]) it is more likely to be deemed custodial than if the questioning occurs without physical restraint or opportunity to restrain. (See People v. Merchant, 260 Cal. App.2d 875, 878 [67 Cal. Rptr. 459] [officer asked questions from outside locked screen door].
[12] The longer the period of questioning, the more likely it will be found to be coercive and custodial, although even one question may be enough in the proper circumstances. (See People v. White, supra, 69 Cal.2d 751, 761; People v. Abbott, supra, 3 Cal. App.3d 966, 969; People v. Wilson, 268 Cal. App.2d 581, 584, 586 [74 Cal. Rptr. 131].) Likewise, the more accusatorial the questioning, the more likely the questions will be deemed coercive. (See People v. Abbott, supra, 3 Cal. App.3d at p. 969.)
[13] There apparently is no requirement that the suspect testify that he did, in fact, believe that he was in custody, if the evidence shows clearly that as a reasonable person he could so believe. (See People v. Abbott, supra, 3 Cal. App.3d at p. 969; People v. Ellingsen, 258 Cal. App.2d 535, 542 [65 Cal. Rptr. 744]; People v. Ceccone, supra, 260 Cal. App.2d 886, 893; People v. Thomas, 12 Cal. App.3d 1102, 1108 [91 Cal. Rptr. 867]; see also People v. Martin, 2 Cal.3d 822, 829 [87 Cal. Rptr. 709, 471 P.2d 29]; contra, People v. Butterfield, 258 Cal. App.2d 586, 591 [65 Cal. Rptr. 765].)
[14] Appellant, of course, testified that even more than two officers came upon the scene and that one drew a gun. Such evidence, if it had been believed by the court, would have been even stronger evidence that the indicia of arrest were present.
[15] The court noted that no objective indicia of restraint or compulsion accompanied the officer's request that the suspect go to the police station. (People v. White, supra, 69 Cal.2d 751, 761.)
[16] The court noted that Miranda did not apply to the act of putting on the coat. (Id., p. 761.)
[17] We do not intend to suggest, of course, that whenever a police officer questions a suspect where there is less than probable cause to arrest the suspect, Miranda warnings are required. Such is not, and should not be, the law. (People v. Manis, 268 Cal. App.2d 653, 669 [74 Cal. Rptr. 423].) But, in the typical stop-and-question situation, questioning is "designed to bring out the person's explanation ... and enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges." (Id., p. 665.) In the case at bar, of course, the questioning was not designed to inform the officers whether to arrest appellant. That decision had already been made. Likewise, as noted in Manis, temporary detention "only slightly resembles custody, `as the mist resembles the rain.' ... [T]he person detained is in no sense an accused but rather one merely suspected of misconduct." (Id., p. 667.) In the case at bar, appellant was an accused in every sense of the word.