[Crim. No. 13533. Third Dist. Feb. 28, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DANNY BILL TAYLOR, Defendant and Appellant.

**COUNSEL**

Daniel G. McCoy, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Garrick W. Chock, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—In this case, we consider when law enforcement officers are required to give *Miranda*[1] warnings to a suspect whom they have detained pursuant to an "investigative stop." We conclude that where defendant was detained by at least four sheriff's officers, several patrol cars and a helicop-

---

[1] See *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

ter, and was held at gunpoint, *Miranda* warnings were required before an officer showed defendant suspicious items of property to find out whether the items belonged to him.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of March 17, 1983, Sacramento County Sheriff's Detective Charles Long was positioned in a marked patrol unit in the vicinity of 28th and Q streets on a residential "stake out." Jessie Taylor, described by the officer only as a "white man" who was a "wanted person," was the subject of the surveillance.

When Detective Long observed a vehicle, driven by a White male, leave the Taylor residence, Long followed the vehicle, believing the driver to be Jessie Taylor. The vehicle soon accelerated to a high rate of speed. In response, Detective Long activated the patrol car's red light and siren and "advised radio" of the pursuit. Long obtained assistance from other patrol cars and the department's helicopter. A pursuit ensued for approximately a mile and a half at which point the helicopter and several patrol cars effected a stop. Detective Long arrived immediately thereafter.

Corporal Lauther also arrived at the scene of the stop and observed Officer Ritter, with his gun drawn, instructing a man to come forward. No other reference to the gun appears in the record. The man was 15 feet away from a tree situated in a backyard. Next to the tree was a fence. The man was then identified not as "wanted person" Jessie Taylor but rather as Danny Taylor.

Corporal Lauther was advised by Officer Yoshita, who piloted the helicopter, to search the area around the tree as defendant had been observed in that area. Lauther found a woman's bracelet and a glove near the tree and observed car keys and a flashlight on the other side of the fence in the backyard. Lauther handed Detective Long the bracelet and directed him to complete the search of the area near the tree and the fence. Long retrieved the flashlight, car keys and one brown glove from the backyard. On a tree near the street, Long located another brown glove.

Without asking defendant any questions Detective Long then showed the items to the defendant to find out whether they belonged to him. Defendant remarked, "I don't know why, I just lost my head, when I threw them away, I just lost my head." Defendant was then arrested and other items of jewelry were found in his pockets during a subsequent booking search at the jail.

At the time Detective Long showed defendant the items, he had no information that the items were either contraband or tools used to commit a crime. At that time, defendant was not suspected of having committed a crime warranting a custodial arrest but was rather being detained for traffic violations: failure to yield to a red light and siren, speeding, and reckless driving.

The bracelet and the jewelry found on defendant were later identified as having been taken in a burglary that had occurred earlier that month.

Defendant pled guilty to one count of receiving stolen property (Pen. Code, § 496)[2] and admitted he violated probation which had been granted upon a prior conviction for credit card fraud. (§ 484f.)

█ On appeal, defendant contends the trial court erroneously denied his motion to suppress evidence[3] (§ 1538.5) inasmuch as the evidence was a product of an illegal arrest. █ █ █ He argues the statement made to Detective Long, upon which the officers and the trial court relied to establish probable cause to arrest,[4] was obtained unlawfully because he had not been given his *Miranda* rights.[5] █ Thus, his argument continues, the arrest was illegal and the fruits of the illegality—particularly the items found in his pockets when he was booked at the jail—should have been suppressed. Defendant contends Detective Long should have given him his *Miranda* rights because he was "in custody" at the time.[6]

---

[2]All further statutory references are to the Penal Code unless otherwise indicated.

[3]The motion was determined upon evidence submitted at the preliminary hearing.

[4]In denying the section 1538.5 motion, the court found: "The motion to suppress is denied. I'm satisfied that the stop was proper in the first place because of the traffic violations. The admission was properly obtained, regarding the defendant's having thrown the stolen property and other property from the car, and once that admission had been made, the officers had probable cause to arrest. The booking search was a lawful incident of the arrest . . . ." In ruling on the section 995 motion, the court elaborated on its reasons for determining the statement provided probable cause to arrest: "I'm satisfied that the evidence before the Magistrate establishes probable cause to believe that property was stolen, property was in the possession of Mr. Taylor and he knew that it was stolen. [¶] I think that is inferable from the fact that as his admission disclosed, he disposed of the stolen property thereby manifesting awareness of its status as stolen property."

[5]Section 1538.5 is the proper vehicle for bringing a motion to suppress evidence on the ground that it was obtained as the fruit of a statement obtained in violation of *Miranda*. (See *Green* v. *Superior Court* (1985) 40 Cal.3d 126, 133, fn. 3 [219 Cal.Rptr. 186, 707 P.2d 248]; *People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 733-734 [125 Cal.Rptr. 798, 542 P.2d 1390]; *People* v. *Superior Court (Mahle)* (1970) 3 Cal.App.3d 476, 484 [83 Cal.Rptr. 771], disapproved on other grounds in *People* v. *Turner* (1984) 37 Cal.3d 302, 318 [208 Cal.Rptr. 196, 690 P.2d 669].)

[6]Defendant prudently concentrates on whether the *means used* to stop and detain defendant put him in custody. He does not argue that the officers lacked reasonable suspicion to stop or detain him. Clearly the officers were justified in stopping and detaining him in the cir-

## DISCUSSION

### I

Under *Miranda,* "the prosecution may not use statements . . . stemming from custodial interrogation . . . unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 444 [16 L.Ed.2d at p. 706].) ▮ The People initially contend we need not reach the question whether defendant was "in custody" for *Miranda* purposes because no "interrogation" occurred. The People's argument is premised on the fact that Detective Long merely showed the items of property to defendant without asking him any questions.

The argument is unavailing. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island* v. *Innis* (1980) 446 U.S. 291, 300-301 [64 L.Ed.2d 297, 307-308, 100 S.Ct. 1682], fns. omitted.) While Detective Long's display of the items to defendant was not certain to provoke an incriminating response, given all circumstances such a response was reasonably likely.

▮ Moreover, if defendant was "in custody," *Miranda* warnings were required even though by showing defendant the items Detective Long merely intended to allow defendant to explain incriminating circumstances. (See *People* v. *Turner, supra,* 37 Cal.3d at p. 318, opn. by Kaus, J.) ▮ "[U]nder *Miranda* the vital question is custody, not whether the investigation has focused on the person interrogated [citations], and it is immaterial that the questioning relates to a crime other than the one which triggered the custody and is investigatory as far as that offense is concerned. [Citations.]" (*In re James M.* (1977) 72 Cal.App.3d 133, 136-137 [139 Cal.Rptr. 902], fn. omitted, opn. by Kaus, J.) ▮ Thus, if defendant was "in custody" when Detective Long showed him the items, *Miranda* warnings were required. We therefore turn to that issue: whether defendant was "in custody."

cumstances. (See *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Garcia* (1981) 121 Cal.App.3d 239, 245 [175 Cal.Rptr. 296]; *People* v. *Taylor* (1975) 46 Cal.App.3d 513, 525 [120 Cal.Rptr. 762].)

## II

*Miranda* warnings are required only where a suspect is subject to "custodial interrogation." (*Oregon* v. *Mathiason* (1977) 429 U.S. 492, 494 [50 L.Ed.2d 714, 719, 97 S.Ct. 711].) "While arrest is not a condition precedent to the right to *Miranda* . . . warnings, custody is: the vice requiring the prophylaxis of the notice of rights is the inherently coercive atmosphere pervading *custodial* interrogation. [Citation.]" (*People* v. *Leach* (1975) 15 Cal.3d 419, 443 [124 Cal.Rptr. 752, 541 P.2d 296], italics in original.)

 California cases have held that suspects were not "in custody" where they were stopped routinely for traffic violations (see, e.g., *People* v. *Lopez* (1985) 163 Cal.App.3d 602, 608-609 [209 Cal.Rptr. 575]; *People* v. *Montoya* (1981) 125 Cal.App.3d 807, 810 [178 Cal.Rptr. 211]; *People* v. *Hubbard* (1970) 9 Cal.App.3d 827, 835-836 [88 Cal.Rptr. 411]) or for "investigatory stops" or "detentions." (See, e.g., *People* v. *Hill* (1974) 12 Cal.3d 731, 767 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872]; *People* v. *Salinas* (1982) 131 Cal.App.3d 925, 936 [182 Cal.Rptr. 683], and authorities cited therein; *Lockridge* v. *Superior Court* (1969) 275 Cal.App.2d 612, 620 [80 Cal.Rptr. 223]; *People* v. *Manis* (1969) 268 Cal.App.2d 653, 669 [74 Cal.Rptr. 423].) However, none of these cases involved the kinds of restraint that were used to stop and detain defendant in the instant matter. We therefore turn to basic *Miranda* principles.

 The rule is that *Miranda* warnings are required before questioning where a citizen has been taken into custody *or* otherwise deprived of his freedom in any significant way or is led to believe, as a reasonable person, that he is so deprived. (*Berkemer* v. *McCarty* (1984) 468 U.S. 420 [82 L.Ed.2d 317, 332, 336, 104 S.Ct. 3138]; *Oregon* v. *Mathiason, supra,* 429 U.S. 492 at pp. 494-496 [50 L.Ed.2d at p. 719]; *Miranda* v. *Arizona, supra,* 384 U.S. at pp. 466-467 [16 L.Ed.2d at p. 706]; *People* v. *Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515]; see *Green* v. *Superior Court, supra,* 40 Cal.3d at pp. 133-134 (plur. opn. of Kaus and Grodin, JJ.).) "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California* v. *Beheler* (1983) 463 U.S. 1121, 1125 [77 L.Ed.2d 1275, 1279, 103 S.Ct. 3517], quoting *Oregon* v. *Mathiason, supra,* 429 U.S. at p. 495 [50 L.Ed.2d at p. 719]; see *Green* v.

*Superior Court, supra,* 40 Cal.3d at pp. 134-135 (plur. opn. of Kaus and Grodin, JJ.).)

■■■ As applied to interactions between citizens and police on the street, these concepts were recently given further definition in *Berkemer* v. *Mc-Carty, supra,* 468 U.S. 420 [82 L.Ed.2d 317]. There, the court considered whether *Miranda* warnings were required where an officer pulled over a vehicle, had the driver perform field sobriety tests, and asked the driver whether he had been consuming intoxicants. (*Id.,* at pp. 423, 424 [82 L.Ed.2d at pp. 324, 325].) Concluding no *Miranda* warnings were necessary, the *Berkemer* court reasoned as follows: "Perhaps most importantly, the typical traffic stop is public, at least to some degree. Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse. The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability. In short, the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself, see 384 U.S. at 445, 491-498 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and in the subsequent cases in which we have applied *Miranda.*

"In both of these respects, the usual traffic stop is more analogous to a so-called 'Terry stop,' see *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868] (1968), than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 881 [45 L.Ed.2d 607, 95 S.Ct. 2574] (1975). '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' *Ibid.* (quoting *Terry* v. *Ohio, supra,* at 29 [20 L.Ed.2d 889, 88 S.Ct. 1868].) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda.* The similarly non-coercive aspect of ordinary traffic stops prompts us to hold that persons

temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda.*

"Respondent contends that to 'exempt' traffic stops from the coverage of *Miranda* will open the way to widespread abuse. Policemen will simply delay formally arresting detained motorists, and will subject them to sustained and intimidating interrogation at the scene of their initial detention. Cf. *State* v. *Roberti,* 293 Ore. 59, 95 [664 P.2d 1104, 1125] (1982) (Linde, J., dissenting) (predicting the emergence of a rule that 'a person has not been significantly deprived of freedom of action for *Miranda* purposes as long as he is in his own car, even if it is surrounded by several patrol cars and officers with drawn weapons'), rev'd on rehearing, 293 Ore. 236 [646 P.2d 1341] (1982), cert. pending, No. 82-315. The net result, respondent contends, will be a serious threat to the rights that the *Miranda* doctrine is designed to protect.

"We are confident that the state of affairs projected by respondent will not come to pass. It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' *California* v. *Beheler,* 463 U.S. 1121, 1124 [77 L.Ed.2d 1275, 103 S.Ct. 3517] (1983) (per curiam). If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda.* See *Oregon* v. *Mathiason,* 429 U.S. 492, 495 [50 L.Ed.2d 714, 97 S.Ct. 711] (1977) (per curiam)." (*Berkemer, supra,* 468 U.S. at pp. 439-440 [82 L.Ed.2d at pp. 334-335], fns. omitted.)

*Berkemer* demonstrates the semantic slipperiness of the requirement that a citizen be "in custody" for *Miranda* purposes. We ordinarily associate the concept of being "in custody" with the notion that one has been formally arrested. Thus, for example, section 834 provides, "An arrest is taking a person into custody, in a case and in the manner authorized by law." However, *Berkemer* makes clear that the question whether a citizen is "in custody" cannot be applied in a mechanical fashion by ascertaining, for example, whether a citizen has in fact been arrested.[7] (See

---

[7]The weight of recent authority holds that police officers have a right to use force, including the blocking of a vehicle and the display of a weapon, to accomplish an otherwise lawful investigatory stop or detention provided the force is reasonable in the circumstances to protect the officers or members of the public. (See *United States* v. *Jones* (8th Cir. 1985) 759 F.2d 633, and authorities discussed therein; compare *United States* v. *Strickler* (9th Cir. 1974) 490 F.2d 378.) In such circumstances, the police do not effect an unlawful arrest without probable cause. (*Jones, supra,* at p. 641.) "[A]n otherwise valid stop does not inevitably escalate to an arrest merely because the suspect's car was boxed in by police cars, because the police drew weapons, or because reasonable nondeadly force was used to

*Berkemer, supra,* 468 U.S. 420 at p. 440 [82 L.Ed.2d at p. 335].) ▮ Rather, as *Beheler* itself notes, "the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving Miranda protection . . . ." (*Beheler, supra,* 463 U.S. at p. 1125 [77 L.Ed.2d at p. 1279].)

Thus the phrase "in custody," as used in the context of *Miranda,* is not synonymous with "custodial arrest" but is rather a term of art that describes when a citizen has been subject to sufficient restraint by the police to require the giving of *Miranda* warnings.

Both *Berkemer* and *Beheler* supply some important concrete guidelines for applying these rather nebulous rules. Thus, for example, in holding no *Miranda* warnings were required during the roadside stop at issue, *Berkemer* identified several relevant circumstances: (1) the duration of the citizen's detention; (2) the public nature of the detention and the ability of passersby to observe police conduct; and (3) the number of police officers confronting the citizen. (*Berkemer, supra,* 468 U.S. at pp. 437-438 [82 L.Ed.2d at pp. 333-334].) *Beheler* provides a benchmark by which the degree of police restraint can be measured: restraint on freedom of action requires *Miranda* warnings when it is "of the degree associated with a formal arrest." (*Beheler, supra,* 463 U.S. at p. 1125 [77 L.Ed.2d at p. 1279].) *Berkemer* also provides some guidance in ascertaining the degree of restraint commonly associated with a formal arrest under *Beheler:* "There can be no question that respondent was 'in custody' at least as of the moment he was formally placed under arrest and instructed to get into the police car." (*Berkemer, supra,* 468 U.S. at p. 434 [82 L.Ed.2d at p. 331].)

Although *Berkemer* discusses the circumstances of detention noted above, nothing in the opinion suggests that these are exclusive. We believe the relevance of any given circumstance bearing on the need for *Miranda* warnings is ultimately determined by asking whether it tends to show that a reasonable person would, or would not, believe that his freedom had been restricted to a degree associated with a formal arrest.

▮ One well-recognized circumstance tending to show custody, which we shall apply here, is the degree of physical restraint used by police officers to detain a citizen: "If the police officer uses physical restraint on the suspect [citation] or draws a gun [citation] it is more likely to be deemed

---

achieve or continue the seizure." (LaFave, *"Seizures" Typology: Classifying Detentions of the Person to Resolve Warrant, Grounds, and Search Issues* (1984) 17 U.Mich. J.L.Ref. 417, 429, fns. omitted.) In the instant case, the force used initially to stop and detain defendant was reasonable in the circumstances; we assume arguendo no arrest had occurred when Detective Long showed defendant the items of property.

custodial than if the questioning occurs without physical restraint or opportunity to restrain. [Citation.]" (*People* v. *Herdan* (1974) 42 Cal.App.3d 300, 307, fn. 11 [116 Cal.Rptr. 641].) It goes without saying that the display of a weapon by police officers plainly conveys to a reasonable citizen the message that he is not free to leave; i.e., that his freedom of action is dramatically curtailed. Moreover, we believe a reasonable citizen who is questioned by police at gunpoint feels an "inherently compelling pressure" (see *Berkemer, supra,* 468 U.S. at p. 433 [82 L.Ed.2d at p. 330]) to respond to the questions.

■ Turning to the instant case, we begin with the axiom that the People have the burden of proving that any search without a warrant falls within an exception to the warrant requirement so that the search is lawful. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 725 [195 Cal.Rptr. 503, 669 P.2d 1278].) Here the burden was on the People to show that items seized from defendant at booking were the products of a lawful custodial arrest. (See *People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606], revd. on other grounds *sub nom. Ross* v. *California* (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850].) Since the lawfulness of the arrest turned on the lawfulness of defendant's statement to the officers, the burden was upon the People to prove the statement was obtained properly in the absence of *Miranda* warnings. (*People* v. *White* (1968) 69 Cal.2d 751, 761 [72 Cal.Rptr. 873, 446 P.2d 993].) That burden, in turn, required the People to produce evidence showing that defendant was not subject to restraints requiring the giving of warnings. (*Ibid.*)

■ In the instant case, the only evidence produced by the People on the officers' use of a weapon showed that Officer Ritter held defendant at gunpoint.[8] We have no doubt that a reasonable person surrounded by at least four officers, several vehicles and a helicopter, and held at gunpoint, was subject to restraints on his freedom of action comparable to those associated with a formal arrest. (See *People* v. *Herdan, supra,* 42 Cal.App.3d at pp. 307-308.) Indeed, the instant scenario closely resembles the one the *Berkemer* court confidently predicted "will not come to pass;" i.e., that a citizen would not be "in custody" even where surrounded by several patrol cars and officers with drawn weapons. (*Berkemer* v. *McCarty, supra,* 468 U.S. at p. 440 [82 L.Ed.2d at p. 335].) That scenario will not come to pass in this case. We conclude defendant was "in custody" and the officers were

---

[8]The evidence shows Officer Ritter held defendant at gunpoint when other officers arrived at the scene. The People presented no evidence showing that defendant was not held at gunpoint throughout the detention although, if that was the case, the burden was upon the People to produce evidence on the point. Since the only evidence on the issue shows defendant was held at gunpoint, we must assume defendant was held at gunpoint throughout the encounter.

obligated to give him *Miranda* warnings before Detective Long effectively questioned him by showing him the suspicious items of property. (See *People* v. *Turner, supra,* 37 Cal.3d at p. 319; *People* v. *Quicke* (1969) 71 Cal.2d 502, 513 [78 Cal.Rptr. 683, 455 P.2d 787].)

 We caution we do not suggest that *Miranda* warnings must be given in each instance where police officers initially use weapons or other force to effect an investigative stop. For *Miranda* purposes, we think the crucial consideration is the degree of coercive restraint to which a reasonable citizen believes he is subject *at the time of questioning.* Police officers may sufficiently attenuate an initial display of force, used to effect an investigative stop, so that no *Miranda* warnings are required when questions are asked. Thus, for example, a police officer may well act reasonably in drawing his gun while he approaches a citizen in an uncertain situation. However, having ascertained that no immediate danger justifies his display of his weapon, the officer may also reholster it. (See *United States* v. *Harley* (2d Cir. 1982) 682 F.2d 398, 400.) Assuming the citizen is subject to no other restraints, the officer's initial display of his reholstered weapon does not require him to give *Miranda* warnings before asking the citizen questions. As a practical matter, a contrary conclusion would imprudently endanger police officers by discouraging them from using protective measures reasonable in the circumstances to effect investigative stops. (See *United States* v. *Jackson* (2d Cir. 1981) 652 F.2d 244, 249-250.)

 In the instant case, as we have noted, *Miranda* was violated because the People failed to carry their burden of showing that the considerable force used initially to detain defendant was attenuated (if it was) before he was questioned. Since defendant's arrest was based upon his statement obtained in violation of *Miranda,* the arrest was unlawful and the items taken from defendant in a subsequent booking search must be suppressed. (See *People* v. *Superior Court (Zolnay), supra,* 15 Cal.3d 729, 735; *People* v. *Wetzel* (1974) 11 Cal.3d 104, 107-110 [113 Cal.Rptr. 32, 520 P.2d 416].)

 The items found on the ground and in the tree in the vicinity of the vehicle stop need not be suppressed because they had been abandoned and were in plain view. (*People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 470 [103 Cal.Rptr. 243, 499 P.2d 499]; *People* v. *Ingram* (1981) 122 Cal.App.3d 673, 681 [176 Cal.Rptr. 199], and authorities cited therein.) However, even though only some of the evidence against defendant must be suppressed, reversal of the judgment is required because defendant's conviction was obtained by plea of guilty. (*People* v. *Miller* (1983) 33 Cal.3d 545, 550-556 [189 Cal.Rptr. 519, 658 P.2d 1320]; *People* v. *Hill* (1974) 12 Cal.3d 731, 767 [117 Cal.Rptr. 393, 528 P.2d 1].)

## Disposition

The judgment is reversed.

Blease, Acting P. J., and Sparks, J., concurred.