[No. G021908. Fourth Dist., Div. Three. July 28, 1998.]

In re JOSEPH R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH R., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Tamara P. Holland, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Carl Horst and Gary W. Brozio, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEDSWORTH, J.**—The juvenile court sustained petitions alleging Joseph R. threw rocks at a public bus (Veh. Code, § 23110), assaulted four people, drove a vehicle unlawfully, and possessed a stolen car. Joseph complains (1) the trial court's order in the rock-throwing case was tainted by the admission of a statement he made without benefit of *Miranda*[1] warnings—which he insists were required because the police had "focused suspicion" on him— and (2) the evidence in the car theft case failed to demonstrate he knew the car he was driving was stolen. Neither claim has merit, and we affirm.

At Joseph's jurisdictional hearing, the prosecutor was permitted to elicit a statement Joseph made to a police officer admitting he threw a rock at a passing bus. Joseph objected to admission of the statement, insisting, as he does here, it was inadmissible in the prosecutor's case-in-chief because the officer neglected to administer *Miranda* warnings and obtain a waiver of rights before commencing his interrogation. The trial judge concluded *Miranda* was inapplicable because Joseph was not subject to custodial restraint when the questions were asked. We agree with the trial court.

Early one evening, Joseph and Michael H. picked some rocks up off the ground and decided to use the passenger windows of a passing public bus for sport. Another youngster saw the two boys throw the rocks and then run into Michael's home. The witness told Santa Ana Police Officer James Tavenner one of the boys was wearing a plaid shirt, and then he pointed the officer to the house they entered.

As Tavenner approached the residence, he spied both boys through a window—one wearing a plaid shirt—and recognized Michael as a probationer he had contacted before. When Michael's mother met him at the front

---

[1]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

door, Tavenner advised her of his suspicions and asked to speak with the boys, who then came out onto the porch. Tavenner received their consent to pat them down for weapons, then told them they did not have to talk to him, but he wanted to ask a few questions.[2] After Michael refused to cooperate, he turned his attention to Joseph.

According to Joseph, the officer informed him a witness had seen him throw a rock at a bus, but Joseph told the officer he had no idea what he was talking about. Tavenner then placed Joseph in handcuffs and told him to have a seat in the back of his patrol car.[3] The officer left him sitting in the car for about five minutes. When Tavenner returned, he took Joseph out of the car, removed the handcuffs, and began asking questions about the incident.

Early on in the conversation, he suggested it was "a pretty stupid thing" to throw rocks at a bus, and Joseph conceded, "Yeah, it was a pretty dumb thing for us to do." The prosecutor used that admission against Joseph at his jurisdictional hearing, over Joseph's objection. Joseph now contends the court's ruling was erroneous, but we find the statement was properly admitted in evidence.

I

While the questions posed by Officer Tavenner were not preceded by any of the warnings or waivers required by *Miranda* v. *Arizona, supra,* 384 U.S. 436, they were only put to Joseph *after* he was released from the police car and the handcuffs were removed. Moreover, the restraints were applied only briefly—for five minutes—before questioning began. Never, during his contact with the officer, was Joseph told he was under arrest or that he would be placed under arrest unless he cooperated with the officer's investigation. On the contrary, he was told he was under no obligation to answer any of the officer's questions.

---

[2]While Joseph insists in his opening brief that Tavenner never told him he was free to disregard his questions, he recognizes the officer testified that he did, in fact, impart that information elsewhere in his brief. The trial court accepted the officer's testimony in this regard, and we are obliged to accept the court's finding. "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]" (*People* v. *Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].)

[3]The officer could not recall ever having Joseph cuffed or in the police car, but the trial court specifically found the minor credible when he testified to these facts. On the other hand, contrary to the implication raised by our concurring and dissenting colleague, the court did *not* express belief in the minor's other assertions, including the minor's speculation that he was handcuffed and placed in the police car because the officer was mad at him. There is, thus, *no support* in the record for our colleague's assertion that Officer Tavenner decided to "turn up the heat" on Joseph by engaging in "hardball tactics" to coerce a confession.

Even at the point Joseph was cuffed and placed in the back seat of the patrol car, the record reveals no evidence to indicate he was ever told he was going to be taken to the station house or, for that matter, taken anywhere at all. Rather, because the time during which Joseph was restrained was extremely short, it seems likely he was handcuffed and placed in the police car merely so the officer could maintain control of the minor while he carried on another portion of his investigation.[4] (See, e.g., *Adams* v. *Williams* (1972) 407 U.S. 143, 146 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612] [a detention for the purpose of maintaining the status quo may be reasonable depending on the circumstances]; *United States* v. *Purry* (D.C. Cir. 1976) 545 F.2d 217, 220 [178 App.D.C. 139] [handcuffing a reasonable procedure to maintain status quo while further investigation performed].)[5]

Joseph recognizes that *Miranda* only applies to *custodial* interrogation. (*Miranda* v. *Arizona*, *supra*, 384 U.S. at pp. 444-445 [86 S.Ct. at p. 1612]; accord, *People* v. *Bradford* (1997) 15 Cal.4th 1229, 1310 [65 Cal.Rptr.2d 145, 939 P.2d 259].) However, he insists *Miranda* warnings should have preceded the officer's questions since, at the time they were asked, he *was* in custody—because Officer Tavenner had focused suspicion on him.

To support his argument, Joseph cites *In re Pablo C.* (1982) 129 Cal.App.3d 984 [181 Cal.Rptr. 468]. The *Pablo C.* court reversed an order declaring a minor to be a ward of the juvenile court because *Miranda* warnings were not read to him when he was detained on a bridge for questioning after a motorist reported someone had been dropping pieces of concrete on passing cars. (*Id.* at p. 987.)

According to *Pablo C.*, ". . . a *Miranda* warning must be given as soon as probable cause to arrest has been established [citation] or as soon as the suspect is physically deprived of his action in any significant way or reasonably believes so. (*People* v. *Arnold* (1967) 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515]; *People* v. *Herdan* (1974) 42 Cal.App.3d 300, 306-310 [116 Cal.Rptr. 641].) Factors which may be considered to determine whether custody has attached include '(1) the site of the interrogation; (2)

---

[4]The officer knew Michael from a prior contact and, since he was at Michael's house, he knew where Michael could be reached. But he "knew not Joseph." Therefore, he had cause to detain him, pending questioning, while he tended to other details of his investigation, to make sure the 14-year-old did not do something stupid like fleeing.

[5]This is not to say that the minor would not have been in custody for purposes of *Miranda* had he been questioned while he was still in the car and under the officer's control. In that case, the interrogation would have been accompanied by restraints that are normally associated with an arrest, thereby requiring *Miranda* warnings be administered. (*Berkemer* v. *McCarty* (1984) 468 U.S. 420, 440 [104 S.Ct. 3138, 3150, 82 L.Ed.2d 317]; accord, *People* v. *Mayfield* (1997) 14 Cal.4th 668, 732 [60 Cal.Rptr.2d 1, 928 P.2d 485]; *People* v. *Clair* (1992) 2 Cal.4th 629, 679 [7 Cal.Rptr.2d 564, 828 P.2d 705].)

whether the investigation has focused on the subject; (3) whether the objective indicia of arrest are present; and (4) the length and form of questioning.' (*People* v. *Herdan, supra,* at p. 307, fns. omitted.)" (*In re Pablo C., supra,* 129 Cal.App.3d at pp. 988-989.)[6]

Were *Pablo C.* the law, Joseph would have himself more of a case. But, as a consequence of Proposition 8, the test set out in *Pablo C.* has not been controlling law in California for more than 15 years.[7] (Cal. Const., art. I, § 28, subd. (d); *People* v. *Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588]; *People* v. *May* (1988) 44 Cal.3d 309, 318 [243 Cal.Rptr. 369, 748 P.2d 307]; *In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744].)[8] More than two decades ago, the United States Supreme Court made it clear that custody, as that term is used in connection with *Miranda,* does not occur simply because an officer focuses suspicion on the suspect and is not at all dependent on the situs of the

---

[6]In *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], a majority of the United States Supreme Court found a violation of the Sixth Amendment right to counsel when the police questioned an uncharged suspect who had become the focus of their suspicions without warning him of his right to remain silent. Soon after *Escobedo* was filed, however, the court realized dissenting Justice Stewart was right (378 U.S. at pp. 493-495 [84 S.Ct. at pp. 1766-1767] (dis. opn. of Stewart, J.)). Its analysis was leading it down a blind alley, since the Sixth Amendment—by its own terms—only applies when there is an "accused" in a "criminal prosecution." By 1966, the court jettisoned its focus of suspicion test and *Escobedo*'s Sixth Amendment analysis, limited *Escobedo* to its facts (*Johnson* v. *New Jersey* (1966) 384 U.S. 719, 734-735 [86 S.Ct. 1772, 1781, 16 L.Ed.2d 882]) and, in its place, the court created *Miranda.* Ever since that day, the court has been working to undo the repercussions of its *Escobedo* miscue. The court has not only limited *Escobedo* to its facts, it has found it necessary to expressly and repeatedly disavow its analysis. (*United States* v. *Gouveia* (1984) 467 U.S. 180, 188-189 [104 S.Ct. 2292, 2298, 81 L.Ed.2d 146]; *Beckwith* v. *United States* (1976) 425 U.S. 341, 345 [96 S.Ct. 1612, 1615, 48 L.Ed.2d 1]; *Kirby* v. *Illinois* (1972) 406 U.S. 682, 688-690 [92 S.Ct. 1877, 1881-1882, 32 L.Ed.2d 411].) Still, the tentacles of the case have penetrated deep into the sinew of California law, and its vestiges have been difficult to excise. Witness the four-factor formulation in *People* v. *Herdan* (1974) 42 Cal.App.3d 300 [116 Cal.Rptr. 641], which looks in part to whether an officer has focused suspicion on the suspect to determine whether custody has occurred and the police have a duty to advise a suspect of his or her rights. The formulation finds its roots in *Escobedo,* which is no longer the law. Unfortunately, California cases continued, uncritically, to repeat it for years after its foundation was jettisoned by the court that invented it in the first place.

[7]*Pablo C.* was published in March 1982, nearly three months before the passage of Proposition 8. Its abrogation has previously been recognized in *People* v. *Gastile* (1988) 205 Cal.App.3d 1376, 1384-1386 [253 Cal.Rptr. 283], where the court, in dealing with a related issue, held Proposition 8 eliminated the California rule that a confession obtained without *Miranda* compliance taints any subsequent confession. (See also *People* v. *Harris* (1989) 211 Cal.App.3d 640, 649-650 [259 Cal.Rptr. 462].)

[8]While the Attorney General distinguishes *Pablo C.,* it should be noted that the United States Supreme Court has gone to great lengths in the last quarter century to make it clear that an officer's focus of suspicion, like any other uncommunicated subjective concern entertained by a peace officer, has *nothing* to do with *Miranda* custody. *Pablo C.* is therefore not controlling authority.

interrogation. (*Oregon* v. *Mathiason* (1977) 429 U.S. 492, 495 [97 S.Ct. 711, 714, 50 L.Ed.2d 714].) When the defendant argued the *Herdan* rule in *California* v. *Beheler* (1983) 463 U.S. 1121 [103 S.Ct. 3517, 77 L.Ed.2d 1275]), the United States Supreme Court unceremoniously rejected it and explained that "a suspect is 'in custody' for purposes of receiving *Miranda* protection" only if "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*Id.* at p. 1125 [103 S.Ct. at p. 3520].)

When the California Supreme Court relied upon the *Herdan* factors yet again in *People* v. *Stansbury* (1993) 4 Cal.4th 1017, 1050 [17 Cal.Rptr.2d 174, 846 P.2d 756],[9] the United States Supreme Court reversed its judgment in a unanimous per curiam opinion, emphasizing that an officer's focus of suspicion is "not relevant" to determining whether a suspect is in custody for purposes of *Miranda*. (*Stansbury* v. *California* (1994) 511 U.S. 318, 326 [114 S.Ct. 1526, 1530, 128 L.Ed.2d 293, 301].) The court's message could hardly have been put with greater lucidity: "Our decisions make clear that . . . custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." (*Id.* at p. 323 [114 S.Ct. at p. 1529, 128 L.Ed.2d at p. 298].)

■ "[A]n officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." (*Stansbury* v. *California, supra*, 511 U.S. at p. 325 [114 S.Ct. at p. 1530, 128 L.Ed.2d at p. 300].) "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue . . . ." (*Ibid.*)

As the court in *People* v. *Taylor* (1986) 178 Cal.App.3d 217 [223 Cal.Rptr. 638] explained in a similar context, "For *Miranda* purposes, we think the crucial consideration is the degree of coercive restraint to which a reasonable [person] believes he is subject *at the time of questioning*. Police officers may sufficiently attenuate an initial display of force, used to effect an investigative stop, so that no *Miranda* warnings are required when

[9]In *Stansbury*, the court cited *People* v. *Boyer* (1989) 48 Cal.3d 247 [256 Cal.Rptr. 96, 768 P.2d 610] as authority for the rule, but *Boyer* relied on *People* v. *Herdan, supra*, 42 Cal.App.3d at page 272 and was subsequently disapproved in *People* v. *Stansbury, supra*, 9 Cal.4th at page 830, footnote 1.

questions are asked. Thus, for example, a police officer may well act reasonably in drawing his gun while he approaches a [person] in an uncertain situation. However, . . . the officer may also reholster it. (See *United States* v. *Harley* (2d Cir. 1982) 682 F.2d 398, 400.) Assuming the [person] is subject to no other restraints, the officer's initial display of his reholstered weapon does not require him to give *Miranda* warnings before asking the [person] questions." (*People* v. *Taylor, supra,* 178 Cal.App.3d at p. 230, italics in original; accord, *People* v. *Clair, supra,* 2 Cal.4th 629, 679.)[10]

Here, when Officer Tavenner began questioning Joseph, Joseph had been released from the temporary restraints he experienced while the officer tended to another aspect of his investigation. By the minor's own admission, he was never told he was going to be arrested, but he *was* told he need not answer the officer's questions. The entire encounter lasted only about 15 or 20 minutes. After the interrogation was completed, the officers left the scene alone. Joseph was, in fact, not arrested for another six weeks. Under these circumstances, we conclude the trial court was correct in determining the warnings and waivers required by *Miranda* did not apply. Therefore, the trial court did not err by admitting Joseph's statement acknowledging his involvement in the crime.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Sills, P. J., concurred.

---

[10]In *United States* v. *Guarino* (D.Conn. 1986) 629 F.Supp. 320, cited by our dissenting colleague, the court reached a different conclusion, albeit on more oppressive facts. It decided *Miranda* warnings should have been given to a suspect who, less than a half hour before questioning, had been handcuffed in his residence for 15 minutes "with his hands behind his back and surrounded by armed [federal] agents" (*id.* at p. 324) who promised to stay on the premises until they could obtain a warrant to search his house. (*Id.* at p. 325.) The district court was troubled because ". . . defendant's elderly mother was visibly shaken and often crying" as a result of the agents' presence, which the court found "buttresse[d] defendant's testimony that he never felt free to leave." (*Id.* at p. 325.) Consequently, the court held the defendant was in custody for purposes of *Miranda.* Under United States Supreme Court precedent, however, "the only relevant inquiry" is how a reasonable person, not the defendant, "would have understood his situation" (*Berkemer* v. *McCarty, supra,* 468 U.S. at p. 442 [104 S.Ct. at p. 3151]) and whether, at the time of the interrogation, the defendant was subjected to formal arrest or a restraint on his freedom " 'of the degree associated with a formal arrest.' " (*New York* v. *Quarles* (1984) 467 U.S. 649, 655 [104 S.Ct. 2626, 2631, 81 L.Ed.2d 550].) The *Guarino* court, while paying lip service to these tests, does not appear to have applied them. In contrast, the holding in *Taylor* is consistent with the United States Supreme Court's interpretation of its own rule and is the law in California.

*See footnote, *ante,* page 954.

**SONENSHINE, J.,** Concurring and Dissenting.—I concur with the majority's decision regarding the sufficiency of the evidence to support the finding Joseph R. unlawfully drove a vehicle. However, I dissent from the majority's conclusion Joseph was not in custody for *Miranda* purposes. (See *Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].)

First the facts. Joseph, age 14, was visiting Michael H., age 13, when uniformed Police Officer James Tavenner and his partner arrived to investigate a recent rock-throwing incident. After speaking with Michael's mother, Tavenner had the minors come out on the porch, telling them he had received information they were involved in a crime. He searched the boys but told them they did not have to answer questions. Michael declined to talk, but Joseph was willing to speak with the officer.

On the sidewalk in front of Michael's house, Tavenner told Joseph that witnesses had seen him throwing rocks at a bus. As Joseph put it, Tavenner "just kept saying, trying to say that it was me [because] there is a witness[.]" When Joseph denied the allegation, Tavenner "got mad," handcuffed Joseph and placed him in the back of his police car.

Five minutes passed before Tavenner told Joseph to get out of the car. At that point, Tavenner removed Joseph's cuffs, but he did not tell him he was free to leave. Instead, Tavenner resumed his interrogation until Joseph finally confessed to throwing the rocks. Tavenner never *Mirandized* Joseph during the encounter.

In *Miranda* v. *Arizona, supra,* 384 U.S. 436, the United States Supreme Court established procedural safeguards to protect a suspect's Fifth Amendment rights during custodial interrogation.[1] These safeguards, commonly known as *Miranda* warnings, were created to offset the inherently coercive effects of police questioning "after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." (*Id.* at p. 444 [86 S.Ct. at p. 1612], fn. omitted.)

In deciding whether a person was in custody for *Miranda* purposes, we must examine all of the circumstances, including the scene of the interview, the age and experience of the person questioned, the length and manner of questioning, and, to the extent it is conveyed to the person under questioning, the officer's subjective belief the person is a suspect. (See *Stansbury* v.

---

[1] Particularly, the police are required to inform a suspect "he [or she] has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed." (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 444 [86 S.Ct. at p. 1612].)

*California* (1994) 511 U.S. 318 [114 S.Ct. 1526, 128 L.Ed.2d 293]; *United States* v. *Rorex* (8th Cir. 1984) 737 F.2d 753, 755-756; *People* v. *Morris* (1991) 53 Cal.3d 152, 197 [279 Cal.Rptr. 720, 807 P.2d 949]; *State* v. *Doe* (1997) 130 Idaho 811 [948 P.2d 166].) After considering these criteria, we must then determine whether there was " ' "a formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " (*Stansbury* v. *California, supra,* 511 U.S. at p. 322 [114 S.Ct. at p. 1529].)

There can be little doubt Joseph was subjected to the functional equivalent of a formal arrest. Although the encounter transpired at his friend's house, Joseph was isolated by Tavenner and interrogated on the sidewalk, near two police vehicles. For several minutes, Tavenner asked Joseph pointed questions about the rock-throwing incident, telling Joseph witnesses had implicated him and directly accusing him of the crime. Such intense questioning likely communicated to Joseph he was not free to leave. (See *People* v. *Bellomo* (1992) 10 Cal.App.4th 195, 199 [10 Cal.Rptr.2d 782].) But even if that was insufficient to trigger *Miranda,* surely, as the majority shyly concedes in a footnote (maj. opn., *ante,* at p. 958, fn. 5), Joseph was in custody when Tavenner slapped on the cuffs and whisked him into the police car. Indeed, such intimidating treatment would be considered coercive for the average adult, let alone a 14-year-old. (See generally, 1 LaFave, Criminal Procedure (1984) Interrogations and Confessions, § 6.6(f), p. 498 [courts are likely to find custody for *Miranda* purposes if the suspect is handcuffed or put into a police vehicle].)

Nonetheless, the majority finds no *Miranda* violation because Joseph did not confess until *after* he was released from the police car and his handcuffs were removed. The majority views Tavenner's hardball tactics in cuffing and detaining Joseph as merely attempts to "maintain control of the minor while he carried on another portion of his investigation." (Maj. opn., *ante,* at p. 958.) This assumption, however, finds no support in the record.

What the record does indicate is Tavenner became increasingly irritated with Joseph's denials and decided to turn up the heat by giving Joseph a taste of physical custody. After letting Joseph ponder his predicament for several minutes, Tavenner unshackled the minor and unabashedly resumed his interrogation. By this time, some 30 minutes into the encounter by the minor's estimate, Joseph had enough and went along with Tavenner's allegations.

Under these circumstances, I fail to see how Joseph's status was miraculously changed from "custodial" to "noncustodial" when Tavenner removed

his handcuffs and released him from the police car. In fact, courts have been skeptical any such transformation can so readily occur.

For example, in *United States* v. *Guarino* (D.Conn. 1986) 629 F.Supp. 320, the defendant was handcuffed for about 12 minutes while FBI agents raided his home as part of a narcotics investigation. After removing the cuffs, the agents stayed in the house, ultimately asking defendant what was inside a black bag. Defendant replied the bag contained cocaine.

Although defendant's handcuffs were removed 20 minutes before he made the incriminating statement, the court found the statement was obtained in violation of his *Miranda* rights: "Clearly, a reasonable person in defendant's situation, handcuffed with his hands behind his back and surrounded by armed agents, would have understood he was 'in custody.' *The restraint on defendant's freedom of movement or his otherwise custodial situation, however, did not end when his handcuffs were later removed.*" (*United States* v. *Guarino, supra,* 629 F.Supp. at p. 324, italics added.)

Likewise here, Joseph's custodial situation did not end when his handcuffs were removed, because Tavenner continued to press him until he made an incriminating statement. In other words, "*Miranda* was violated because the People failed to carry their burden of showing that the considerable force used initially to detain [Joseph] was attenuated . . . before he was questioned." (*People* v. *Taylor* (1986) 178 Cal.App.3d 217, 230 [223 Cal.Rptr. 638].) Therefore, I would reverse the judgment with respect to the counts arising out of the rock-throwing incident.[2]

Petitions for a rehearing were denied August 27, 1998, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 18, 1998. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[2]Although Joseph does not so claim, Tavenner also arguably violated Joseph's due process rights by securing a confession through the use of psychological coercion. (See generally, *People* v. *Benson* (1990) 52 Cal.3d 754, 778 [276 Cal.Rptr. 827, 802 P.2d 330] [a confession is involuntary and thus violative of the state and federal guaranties of due process when it is " ' " 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence' " ' "].)