Filed 6/17/13  In re Felix I. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re FELIX I., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FELIX I.,<br><br>    Defendant and Appellant. | G047357<br><br>(Super. Ct. No. DL042527)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Deborah Servino, Judge. Affirmed.

Sheila Quinlan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Michael T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Felix I. appeals from the judgment finding true the allegations of a delinquency petition filed under Welfare and Institutions Code section 602.  He contends incriminating statements he made to a police officer were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  We agree Felix was in custody for *Miranda* purposes when questioned by the officer in the field, and therefore his *unMirandized* statements should have been excluded.  However, his statements made after his arrest, and after he was given and waived his *Miranda* rights, were not the product of a deliberate two-step interrogation in violation of *Missouri v. Seibert* (2004) 542 U.S. 600, 612 (*Seibert*), and were properly admitted.  Accordingly, we affirm the judgment.

## FACTS & PROCEDURE

Early one spring evening, 12-year-old Felix and three other boys went to an elementary school in Anaheim, climbed up on the roof of a portable classroom, and decided to break into it.  Felix went home to get tools and came back with a pair of pliers, which the boys used to pry open the door.  The boys found four walkie-talkies inside the classroom, so two of the boys decided to act as lookouts outside the classroom.  Felix remained inside the classroom with another boy, and they put a Nintendo Wii and some accessories, games, and chargers into a bag.  When one of the lookouts radioed telling them to get out, Felix and the other boy ran from the classroom, and the four boys ran off.  A witness who saw a group of boys running from the classroom called the police.

Felix and the three other boys were soon stopped on the street in front of the school by Anaheim Police Officer Brett Heitmann.  When Heitmann asked the boys what they were doing, Felix volunteered they were "stealing stuff" from the school.

2

Heitmann separated Felix from the other boys, questioned him further, and Felix told him the details of the break in. Felix was arrested and taken to the police station. He was given his *Miranda* warning, agreed to speak to Heitmann again, and repeated his statements about the break in.

The petition alleged one count of second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b)), and one count of possession of burglary tools (Pen. Code, § 466). At the jurisdiction hearing, Felix moved to exclude evidence of the incriminating statements he made to Heitmann on the grounds the statements were obtained in violation of *Miranda*. The juvenile court denied the motion and found the allegations of the petition true. The juvenile court declared Felix a non-ward of (Welf. & Inst. Code, § 725, subd. (a)), and placed him on probation.

## DISCUSSION

Felix contends his pre- and post-arrest incriminating statements to Heitmann should have been excluded. Felix argues he was in custody for *Miranda* purposes during the pre-arrest questioning and the post-arrest questioning was part of a deliberate, two-step interrogation procedure designed to undermine *Miranda*. We agree with Felix's first contention, but reject the latter.

Heitmann was the only witness at the Evidence Code section 402 hearing on Felix's suppression motion. He testified that at about 6:40 p.m., while responding to a 911 call, he saw Felix and the other boys running down the street just outside the elementary school. Heitmann, who was alone, got out of his patrol car and told the boys to stop and sit on the curb. They complied. When asked if he was "arresting" all the boys, Heitmann said, "Yes."

When Heitmann asked the boys what they were doing, Felix responded they were "stealing stuff" from the school. Felix was nervous but cooperative.

Other police officers, four or five of them, soon arrived and Heitmann separated Felix from the other boys, seating him on the curb about 20 feet away. Felix

3

was not in handcuffs. In response to Heitmann's questions, Felix explained he and his friends were at the school climbing on the roof, Felix went home to get tools, including a pair of pliers, to use to break in to the school. When he returned, the boys used the pliers to force open the door to the portable classroom. The boys went in the classroom, took electronic devices, and ran away.

Heitmann questioned Felix for about 10 to 15 minutes. He did not use any physical force on Felix or touch him, other than to do a pat-down search. He was wearing his uniform, which included his service weapon, but it was not drawn. Heitmann did not threaten Felix, make any promises of leniency, or tell him he had to speak to him. However, Heitmann did not tell Felix he was free to go, did not consider him free to go, and when defense counsel ask Heitmann if Felix had run off would Heitmann have chased him, Heitmann replied, "possible."

After interviewing Felix, Heitmann placed him under arrest, put him in handcuffs, and drove him to the police station. At the police station, Heitmann read Felix his *Miranda* rights. Felix indicated he understood his rights and was willing to talk to Heitmann. Felix repeated what he had told Heitmann at the school. The interview at the police station lasted about 10 to 15 minutes. Felix was in handcuffs during the station house interview, and no one else was in the room with them. Felix was calm and was not crying. Heitmann testified Felix appeared scared, but it was more like he was disappointed in himself.

After hearing argument from counsel, the court denied Felix's motion to exclude his statements to Heitmann. The court stated it specifically considered Felix's age of 12 years. The court observed an officer is not required to give *Miranda* warnings just because someone is considered a suspect, particularly when in this context "he was asking questions to dissipate any concerns or suspicions at the time." And although Heitmann agreed he never told Felix he was free to go, Felix was not free to go, and had Felix taken off running he would have chased him down, "that's not the same as custody

4

requiring *Miranda*." The court also found Felix was given his *Miranda* warning after he was placed under formal arrest and he voluntarily waived his *Miranda* rights and spoke with Heitmann at the police station.

Heitmann then testified in the prosecution's case in chief largely repeating his testimony from the Evidence Code section 402 hearing. He added the 911 call he was responding to was about a possible burglary at the elementary school. The caller had described the suspects as four juvenile males and at least two were carrying bags. When Heitmann stopped the four boys running away from the school, Felix was carrying a black bag. Heitmann searched the bag, and found the electronics and tools inside. Felix renewed his motion to suppress his statements made to Heitmann during the pre-arrest interrogation. The court denied the motion.

Felix contends statements he made to Heitmann in the field, before his formal arrest, should have been excluded from evidence because they were taken in violation of *Miranda*. The Attorney General asserts no *Miranda* warning was required because Felix was not in custody.

A person interrogated by law enforcement officers after being taken into custody must first be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. (*Miranda*, *supra*, 384 U.S. 436.) Statements taken in violation of this rule are generally inadmissible. (*Stansbury v. California* (1994) 511 U.S. 318, 322.) *Miranda* is premised on the perception that interrogation of a suspect in police custody is inherently coercive. (*Miranda*, *supra,* 384 U.S. at pp. 445-458.) To insure that any statement the suspect makes in that setting is a product of his free will, the United States Supreme Court held the interrogation must be preceded by the essential procedural safeguards in the form of the warnings.

"Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a

defendant did not undergo custodial interrogation, an appellate court must 'apply a deferential substantial evidence standard' [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave' [citation]." (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400; see also *Thompson v. Keohane* (1995) 516 U.S. 99, 112.)

"The totality of the circumstances surrounding an incident must be considered as a whole. [Citations.] Although no one factor is controlling, the following circumstances should be considered: '(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.' [Citation.] Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview. [Citation.]" (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403-1404.) The United States Supreme Court has held a minor's age is also relevant in the custody analysis. (*J.D.B. v. North Carolina* (2011) ___ U.S. ____ [131 S.Ct. 2394, 2406].)

Here, Heitmann responded to a 911 call about four juvenile boys possibly burglarizing an elementary school and who fled the campus carrying a bag. He immediately encountered 12-year-old Felix, who was carrying a bag, and his three cohorts running away from the school. Heitmann stopped the boys, directed them to sit on the curb, and asked the boys what they were doing. Felix immediately volunteered

6

they were "stealing stuff" from the school. At that point, several other officers arrived, and Felix was separated from the other boys. Heitmann pat searched Felix, searched Felix's bag finding the electronics inside, and proceeded to ask him "a bunch of questions about what happened." Heitmann did not tell Felix he did not have to talk to him or that he was free to leave—in fact he testified Felix was not free to leave and if had attempted to, he would likely have chased him down. After questioning Felix alone for 15 minutes and getting the details of the crime, Heitmann formally arrested him. The record does not support the juvenile court's characterization of the circumstances as being that Heitmann was merely "asking questions to dissipate any concerns or suspicions" about Felix. Prior to Heitmann's separate questioning of him, Felix had just confessed he and his friends were "stealing stuff" from the school and Felix was carrying the bag loaded with the stolen items.

We recognize there are some factors weighing against a finding Felix was in custody—for example Heitmann questioned Felix alone, there is no evidence he behaved in an aggressive manner towards Felix or coerced the statements, and the questioning was not unduly prolonged. We nonetheless reject the Attorney General's assertion that under the totality of the circumstances any reasonable 12-year-old boy would have felt free to terminate the questioning and leave. The circumstances of *In re Joseph R.* (1998) 65 Cal.App.4th 954, upon which the Attorney General relies, are not comparable. In that case, police questioned a 14-year-old boy in front of his house about a rock throwing incident. (*Id.* at p. 957.) The officer asked the boy for consent to conduct a pat-down search, which the boy gave, and specifically told the boy he did not have to answer the officer's questions, and the boy was not arrested for another six weeks. (*Id.* at pp. 957, 961.) Although the officer had placed the boy in handcuffs in the back of the patrol car for a few minutes, before removing the handcuffs and then asking questions, another panel of this court concluded the boy was not in custody for *Miranda* purposes. (*Ibid.*)

7

Here, Felix was not at his home; there is nothing in the record indicating Heitmann asked for Felix's consent before the pat-down search or told him he did not have to speak with the officer; Felix had just admitted he had been "stealing stuff" from the school before being separated from his companions and questioned in more detail about the crime; and Felix was arrested immediately. Under the totality of the circumstances, no reasonable 12-year-old boy would have felt free to "end the questioning and leave' [citation.]" (*Leonard, supra,* 40 Cal.4th at p. 1400.) Accordingly, Felix was in custody and his incriminating statements made to Heitmann prior to his formal arrest should have been excluded.

That does not, however, end our analysis. Although the pre-arrest statements should have been excluded, after his arrest, Felix was taken to the police station, given a *Miranda* advisement, and he then voluntarily spoke with Heitmann repeating the incriminating statements he made at the scene. In *People v. San Nicolas* (2004) 34 Cal.4th 614, 639, our Supreme Court discussing United States Supreme Court authority observed that subsequent incriminating statements are not excludable merely because they followed otherwise voluntary statements given without *Miranda* warnings. "'[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.' ([*Oregon v.*] *Elstad* [(1985)] 470 U.S.[ 298, 314 (*Elstad*)]; accord, . . . *Seibert*[*, supra,*] 542 U.S. [at pp. 613-614].)

Felix argues the second interview was part of an impermissible deliberate two-step questioning strategy that circumvented *Miranda* and was in violation of *Seibert*, *supra,* 542 U.S. 600. We disagree. In *Seibert, supra,* 542 U.S. at pages 604-605, police woke defendant at 3:00 a.m., arrested her for murder, took her to the police station,

8

questioned her for 30 to 40 minutes until she confessed, gave her a *Miranda* advisement, and then asked her the same questions until she confessed again. The interrogating officer "testified that he made a 'conscious decision' to withhold *Miranda* warnings, thus resorting to an interrogation technique he had been taught: question first, then give the warnings, and then repeat the question 'until I get the answer that she's already provided once.'" (*Id*. at pp. 605-606.) The Supreme Court held the interrogation procedure did not comply with *Miranda* and defendant's postwarning statements were inadmissible. (*Id*. at p. 604.)

   *Seibert's* holding does not extend to a simple failure to give a *Miranda* warning, or to an "'oversight' that 'may have been the result of [the officer's] confusion as to whether the brief exchange qualified as "custodial interrogation."'" (*Seibert*, *supra,* 542 U.S. at p. 614, quoting *Elstad, supra,* 470 U.S. at pp. 315-316.) There is no evidence Heitmann deliberately withheld Felix's *Miranda* warnings to undermine their effectiveness or to obtain a confession. Unlike *Seibert*, there was nothing coercive about the questioning prior to Felix's initial confession. Thus, the first un*Mirandized* interview did not taint the subsequent *Mirandized* statements, which the juvenile court found were voluntarily made.

DISPOSITION

   The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

9