Filed 1/25/24  P. v. Begin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MICHAEL EUGENE BEGIN,<br><br>     Defendant and Appellant. | G061826<br><br>(Super. Ct. No. 18NF3240)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge.  Affirmed in part, reversed in part and remanded.

Britton Donaldson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Michael Eugene Begin of assault with a deadly weapon upon two victims (counts 1 & 3; Pen. Code, § 245, subd. (a)(1))[1] and one count of hit and run with injury (count 2; Veh. Code, § 20001, subd. (a)). It also found true the allegations he personally inflicted great bodily injury on both victims (§§ 12022.7, subd. (a), 1192.7, 667.5). The court sentenced Begin to three years in prison on count 1, imposed and stayed the sentence on count 2, and sentenced him to one year in prison on count three, consecutive to the sentence on count one. As to the great bodily injury allegation for count one, the court sentenced Begin to three years in prison, consecutive to the other prison terms. Pursuant to section 1385, subdivision (c)(2)(B), the court dismissed the great bodily injury allegation for count three. In this appeal, Begin contends the court erred in denying his motion to exclude prearrest statements he made to police officers on the ground those statements were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). Begin also argues the court's minutes and abstract of judgment inaccurately reflect the sentence imposed by the trial court. We conclude only the latter argument has merit. Accordingly, we reverse the judgment in part to correct the abstract of judgment and court minutes. In all other respects the judgment is affirmed.

## FACTS

Begin was driving his truck when he approached two other individuals, Charles M., and Richard L., who were riding their motorcycles. Begin swerved around Charles M. and Richard L. in an unsafe manner. Richard L. approached Begin's truck at a red light. At the light, Richard L. headbutted the side of Begin's truck with his helmet. Richard L. rode to Begin's window where he observed Begin on his cell phone – which

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

angered Richard L. Richard L. reached into the truck and grabbed Begin's cell phone. Richard L. placed the phone on top of Begin's car. Begin punched Richard L. in the shoulder and arm and used a steering wheel lock to hit him.

Richard L. and Charles M. drove away once the light changed to green. Begin followed them, sped up, and abruptly hit Richard L.'s motorcycle. This caused Richard L. to lose control, flying off his bike and hitting the sidewalk. A nearby pedestrian was struck by Richard L.'s motorcycle. Begin fled the scene, running red lights in the process. Richard L. and the pedestrian sustained major injuries.

Officers located Begin the following day and interviewed him without *Miranda* warnings. Begin admitted to hitting Richard L. and fleeing the scene.

The prosecution charged Begin with felony violations of assault with a deadly weapon as to three victims (counts 1 [Richard L.], 3 [the pedestrian], & 4 [Charles M.]). For counts 1 and 3, the prosecution alleged Begin personally inflicted great bodily injury. The prosecution also charged Begin with one count of felony hit and run with injury (count 2).

Begin filed a motion in limine to exclude his statements made to the officers on the grounds that his rights were violated as stated in *Miranda*, *supra*, 384 U.S. 436. The trial court held a hearing on the issue pursuant to Evidence Code section 402. After considering the officer's testimony, listening to the audio recording of the interaction with Begin, and reviewing the accompanying transcript, the court denied the motion to exclude. A jury found Begin guilty of counts 1, 2, and 3, and found Begin personally inflicted great bodily injury on Richard L., and the pedestrian. The court dismissed count 4.

The trial court sentenced Begin to three years in prison for count 1 and a consecutive three years in prison for the personal infliction of great bodily injury attached to count 1. The court imposed and stayed the sentence on count 2. The court sentenced Begin to one year on count 3, consecutive to the sentence on count 1, for a total prison

3

sentence of seven years. The court dismissed the personal infliction of great bodily injury enhancement attached to count 3 pursuant to section 1385, subdivision (c)(2)(B).

Appellant timely appealed.

## DISCUSSION

Begin challenges the admissibility of his statements made to police officers. He argues the statements were the unlawful product of an un-*Mirandized* custodial interrogation. We disagree.

I. *Admissibility of Appellant's Statements*

A. *Procedural History*

Begin filed a motion in limine to exclude his statements made to the officers on the grounds that his rights were violated as stated in *Miranda*, *supra*, 384 U.S. 436. The trial court held a hearing on the issue pursuant to Evidence Code section 402.

At the hearing, the prosecution called one witness, a police officer. The officer testified he was following Begin with his partner. They were in plain clothes and in an unmarked police car. They wanted to contact Begin to further their investigation into him as a possible suspect in a hit and run with injury.

Prior to contacting Begin, the officers requested the Orange County Sheriff's Department send two patrol units and uniformed officers to the scene. The officer testified he wanted Begin to know it was law enforcement coming to speak with him. Four uniformed sheriff's deputies arrived to assist the officers.[2]

_____

[2]     The testimony on the exact number of officers present was not clear. At one point the officer testified there were four uniformed deputies. At another point, he testified there were only four *total* officers. The trial court made no specific factual findings on this point, noting only the ratio of officers to Begin was a factor weighing in favor of a finding of custody. Since it is the prosecution's burden to establish Begin was not in custody, we assume, for the purposes of this opinion, there were six total officers, four uniformed deputies and two plain clothed officers. (*People v. Villasenor* (2015) 242 Cal.App.4th 42, 59 (*Villasenor*).)

4

The officers contacted Begin outside of his truck once the patrol units arrived.[3] Because they were investigating a possible violent felony, the officers' weapons were drawn and in the "low-ready" position. This means the firearms were in the officers' hands, drawn from their holster, and pointed at a 45-degree angle towards the ground. The weapons were not pointed directly at Begin but were pointed in Begin's general direction.

Upon approaching Begin, the officers identified themselves, informed Begin he was being detained, and placed him in handcuffs. The officer testified he told Begin he was not under arrest but was only being detained.

The officers told Begin to sit on a nearby curb while they searched the car for safety reasons. After officers searched the car, they removed the handcuffs, and questioned Begin. Begin was in handcuffs for less than 10 minutes. During the questioning, the uniformed deputies were across the street, 25 yards away. They did not participate in the interview.

The interview lasted approximately 20 minutes and was audio recorded. The officer testified that his questions were designed to learn Begin's side of the story. Begin was not read his *Miranda* rights prior to questioning.

Officers asked Begin several questions about the incident, including if the truck was his, if he was involved in an altercation the night before, if he hit anyone with his car, and if he left the scene. Begin explained he passed a couple of guys on motorcycles, and, after doing so, one of the men stopped next to his truck, punched him, grabbed his phone, and rode off. Begin admitted to hitting a man with his truck and

---

[3]     Begin stopped at a particular street address, but the record is not clear as to the nature of that address. The trial court indicated it could hear traffic in the background of the audio. For the purposes of this opinion, we note the interrogation did not take place in a confined space, such as the stationhouse.

5

driving away. Begin told the officers he should have called the police and turned himself in.

The trial court described the officers' demeanor from the audio as extremely calm, restrained, nonconfrontational, and nonaggressive. The trial court stated Begin sounded rational, composed, and made free flowing and spontaneous statements throughout the interview.

B. *Standard of Review*

In reviewing a trial court's ruling on a motion to exclude evidence based on a *Miranda* violation, we accept the trial court's resolution of disputed facts and inferences, as well as credibility evaluations, if supported by substantial evidence. (*People v. Thomas* (2011) 51 Cal.4th 449, 476 (*Thomas*).) We independently determine from the undisputed facts and facts properly found by the trial court whether the challenged statement was obtained in violation of *Miranda.* (*Thomas, supra*, at p. 476.)

C. *Applicable Law*

The Fifth Amendment to the Constitution of the United States protects persons accused of crimes from being compelled to incriminate themselves. The landmark case, *Miranda, supra*, 384 U.S. 436, arose out of problems applying the Fifth Amendment privilege to individuals subject to out-of-court custodial police interrogation. In *Miranda*, the Supreme Court held that, in all criminal proceedings, prosecutors are precluded from using the statements of a defendant made during a "custodial interrogation" unless prosecutors showed the use of procedural safeguards to secure the privilege against self-incrimination. (*Miranda,* at p. 444.) These safeguards, devised to inform accused persons of their right to silence, their right to the presence of an attorney or to have one appointed for them, and to provide warning that any statement made may be used as evidence against them, are collectively known as the *Miranda* rights (also referred to as a *Miranda* warning or *Miranda* advisement). (*Ibid.*)

6

Law enforcement officers are not required to issue *Miranda* warnings to every person whom they question. (*Oregon v. Mathiason* (1977) 429 U.S. 492, 495.) *Miranda* warnings are only required when a person is subject to "custodial interrogation" by law enforcement officers. (*Id.* at p. 494.)

A suspect is in custody when placed under arrest or when a reasonable person in the suspect's position would believe his or her "freedom of action is curtailed to a 'degree associated with formal arrest.' [Citation.]" (*Berkemer v. McCarty* (1984) 468 U.S. 420, 440.) "'Custody determinations are resolved by an objective standard: Would a reasonable person interpret the restraints used by the police as tantamount to a formal arrest? [Citations.] The totality of the circumstances surrounding an incident must be considered as a whole.' [Citation.]" (*In re I.F.* (2018) 20 Cal.App.5th 735, 759.)

"A more comprehensive, although not exhaustive, list of relevant circumstances includes [1] 'whether contact with law enforcement was initiated by the police or the person interrogated, and if by the police, whether the person voluntarily agreed to an interview; [2] whether the express purpose of the interview was to question the person as a witness or a suspect; [3] where the interview took place; [4] whether police informed the person that he or she was under arrest or in custody; [5] whether they informed the person that he or she was free to terminate the interview and leave at any time and/or whether the person's conduct indicated an awareness of such freedom; [6] whether there were restrictions on the person's freedom of movement during the interview; [7] how long the interrogation lasted; [8] how many police officers participated; [9] whether they dominated and controlled the course of the interrogation; [10] whether they manifested a belief that the person was culpable and they had evidence to prove it; [11] whether the police were aggressive, confrontational, and/or accusatory; [12] whether the police used interrogation techniques to pressure the suspect; and [13] whether the person was arrested at the end of the interrogation.' [Citation.]" (*People v. Potter* (2021) 66 Cal.App.5th 528, 539-540.)

We consider "'the interplay [between] and combined effect of all the [factors and] circumstances to determine whether on balance they created a coercive atmosphere such that a reasonable person would have experienced a restraint tantamount to an arrest.'" (*People v. Aguilera,* (1996) 51 Cal.App.4th 1151, 1162.)

"It is the prosecution's burden to prove, by a preponderance of the evidence, the accused's rights under *Miranda* were not violated." (*Villasenor, supra*, 242 Cal.App.4th at p. 59.)

D. *Was Begin Interrogated?*

The Attorney General argues Begin was not interrogated within the meaning of *Miranda* and, the argument goes, it does not matter if he was in custody or not. We are not persuaded.

"[I]nterrogation" refers not only to express questioning, but to words and actions by police which officers should know are reasonably likely to elicit an incriminating response. (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301.) The focus is on the perceptions of the suspect, rather than the intent of the police. (*People v. Davis* (2005) 36 Cal.4th 510, 554.)

As they initiated contact with Begin, officers handcuffed him and searched his truck. Officers initiated the questioning with Begin as a potential suspect in a crime. They asked Begin several questions, including, for example: "Who else drives your truck?" "Were you involved in some type of collision last night?" "You had an altercation?" "Did you see what happened after he bounced off?" "[T]he reason you didn't call the police was because you figured since he assaulted you first . . . or, am I correct in saying that, or is there a different reason?" These questions are directly relevant to the crime Begin was suspected of committing.

Begin may have provided some spontaneous statements and responses without struggle, but that does not detract from the fact it was the officers' questions which were the onus behind those statements and responses. This is not a case where

8

Begin freely availed himself to law enforcement to confess or clear his conscience.  (Cf. *People v. Ray* (1996) 13 Cal.4th 313, 337-338.)  This was an interrogation.

E.  *Was Begin in Custody?*

We acknowledge there are several factors weighing in favor of finding Begin was in custody while he was interrogated.  Begin was approached by six officers at gunpoint.  Their weapons were at the "low-ready" position and pointed in Begin's direction.  Officers told Begin to sit on the curb where he was handcuffed for 10 minutes while his car was searched.

Undoubtedly, these circumstances present an intimidating situation and, at the point and time the officers' guns were drawn and he was handcuffed, Begin was certainly not free to leave.  A reasonable person would not think otherwise.  Moreover, this initial display of force was reasonable for the officers' safety and to maintain control of the situation while they conducted their investigation under the circumstances present according to this record.  (*See In re Joseph R.* (1998) 65 Cal.App.4th 954, 958 [holding minor was not in custody even though he was initially handcuffed and placed in patrol car, where officers did so to maintain control of the minor while they carried on other aspects of investigation].)  However, our inquiry, for purposes of *Miranda*, must focus on "'the degree of coercive restraint to which a reasonable citizen believes he is subject *at the time of questioning*.'  [Citation.]" (*Thomas, supra*, 51 Cal.4th at p. 478.)

During the interrogation itself, Begin was neither handcuffed nor restrained.  There were no weapons drawn nor any show of force.  The four uniformed deputies were 25 yards away and were not participating in the interview.  The two interrogating officers told Begin he was only being detained and was not under arrest.  Also, the trial court found the officers were calm, restrained, and nonconfrontational in their demeanor.  Begin was not questioned in a confined space such as the stationhouse, and the interview was relatively short.  Under the totality of these circumstances, we conclude Begin was not in custody when he was interrogated by the two officers.

9

F.  *Did Begin Suffer Prejudice?*

Even if Begin's statements were obtained in violation of *Miranda*, Begin elected to testify at his trial.  In doing so, he vitiated any prejudice which resulted from the use of his statements.  As the Attorney General correctly points out, Begin "cannot rely on prejudice arising out of the tendency of the statements to rebut [his] own testimony because the statements would have been admissible to impeach that testimony, regardless of the *Miranda* violation."  (*People v. Polk* (2010) 190 Cal.App.4th 1183, 1197-1198.)

Begin makes no contention he would not have testified if the pretrial motion to suppress was granted.  Nor does he argue his trial strategy or testimony would have differed in any way.  Begin claims he was prejudiced because the use of his statements affected his credibility.  Even if true, that would be a perfectly permissible use of statements obtained in violation of *Miranda*.  (*Harris v. New York* (1971) 401 U.S. 222, 225.)

Begin also argues prejudice because his statements supplied the officers with the necessary probable cause to arrest and prosecute him.  However, the record does not support this argument, nor does Begin cite to anywhere in the record for support.  Even if there were support, our inquiry focuses on the effect of the statements *at trial*, not in aiding an arrest or prosecution.  (*Chapman v. California* (1967) 386 U.S. 18, 21-22, 26.)

Lastly, Begin argues he was prejudiced because if his statements were not admitted, the officers would not have been able to justify his arrest to the jury at trial.  But the record contains no questioning of the officers by the parties at trial pertaining to the justification for Begin's arrest.

II.  *Need to Correct the Abstract of Judgment*

Begin asks us to correct the court minutes and the abstract of judgment to reflect the sentence handed down by the court.  He claims these documents mistakenly

10

indicate the court stayed the sentence on count three and imposed a one year consecutive sentence for the enhancement. Begin argues the trial court actually sentenced him to a one year consecutive prison term for count 3 and dismissed the enhancement pursuant to section 1385, subdivision (c)(2)(B). The Attorney General agrees. Upon our review of the record, we accept this concession and remand the case for the purpose of correcting the court minutes and abstract of judgment.

## DISPOSITION

The convictions are affirmed. The judgment is partially reversed and remanded with directions for the trial court to modify the court minutes and abstract of judgment to accurately reflect the sentence imposed. Specifically, the record must accurately reflect the court sentenced Begin to a one year consecutive prison term on count 3 and dismissed the accompanying enhancement pursuant to section 1385, subdivision (c)(2)(B). The court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


MOTOIKE, J.

11